## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| BIU, LLC | |
| Petitioner, | |
| v. | No. 23-1163 |
| FEDERAL COMMUNICATIONS COMMISSION | |
| Respondent. | |

## OPPOSITION TO MOTION TO DISMISS

1.      BIU, LLC ("BIU") was defrauded.  As BIU explained in its Petition for Review ("Petition for Review"), R. David Wilson, for reasons that he has refused to disclose, instructed his counsel, Jenner & Block, LLP, to withdraw the Petition for Enforcement of Operational Limits and for Expedited Proceedings to Revoke Satellite Licenses (the "Petition") without BIU's knowledge or consent, notwithstanding the fact that Mr. Wilson had agreed that Spectrum Five LLC ("Spectrum Five") irrevocably designated, made, constituted, and appointed BIU as Spectrum Five's true and lawful attorney-in-fact.  BIU filed the Petition for Review to preserve its ability to reinstate the fraudulently withdrawn Petition.

2.      The Motion to Dismiss and to Defer Filing of the Record

("Motion to Dismiss") filed by the Federal Communications Commission

(the "Commission") is based exclusively on the premise that BIU cannot

seek review of a decision by the Enforcement Division of the Federal

Communications Commission (the "Enforcement Division") and has not

exhausted its administrative remedies.  At the time BIU filed the

Petition for Review, it believe that it *had* exhausted its administrative

remedies.

3.      On June 9, 2023, BIU sent a letter to Loyaan A. Egal, Chief

of the Commission's Enforcement Bureau, informing him that the

Commission and BIU had been defrauded and asking that the

Commission reinstate the Petition.  Dkt. 2004514, Ex. B.  BIU did not

receive notice that the Petition had been withdrawn until *after* the 30-

day deadline to appeal to the full Commission the withdrawal of the

Petition by the Enforcement Division had expired.  BIU therefore could

not have appealed to the full Commission, and the assertion that it did

not exhaust administrative remedies because it was defrauded is

nonsensical.  It cannot be the case that BIU cannot appeal to the full

Commission because the deadline to do so has passed, and cannot seek

review in this Court, because it has not appealed to the full

Commission.  That would amount to judicial imprimatur of fraud.  BIU

filed the Petition for Review because BIU had not received a response to

its June 9 letter before the deadline to file an application for full

Commission review of the dismissal order had passed.  *See* 47 C.F.R. §

1.115(d).

       4.     As the Commission points out in its Motion to Dismiss,

however, on August 11, 2023, after BIU filed the Petition for Review,

the Enforcement Bureau sent a letter of inquiry to Spectrum Five, LLC

and its counsel asking them to respond to the allegations in BIU's June

9 letter.  Motion to Dismiss ¶ 4 & Ex. A.  Mr. Wilson responded to the

Enforcement Bureau's letter on August 25, 2023, and BIU replied to

Mr. Wilson's letter on September 5, 2023.  *See* Exhibits 1 & 2 hereto.

Therefore, it appears that the Enforcement Bureau will issue a decision

whether to reinstate the Petition.  If it does not reinstate the Petition,

BIU then can appeal that decision to the full Commission within the

period established by 47 C.F.R. § 1.115(d).

       5.     On September 6, 2023, BIU sent a letter to the Commission

asking the Commission to confirm the representation that it made in

the Motion to Dismiss: that BIU has not exhausted its administrative remedies and that BIU continues to have an avenue to pursue those remedies. *See* Exhibit 3 hereto. As of the date hereof, BIU has not received a response to its letter, but assuming that the Commission agrees that its representation to the Court was true and accurate, BIU will dismiss the Petition for Review voluntarily.

6. Based on the foregoing, BIU asks the Court to hold in abeyance issuing a ruling on the Motion to Dismiss until the Commission has confirmed or denied BIU's understanding. If the Commission does not agree that BIU still has unexhausted administrative remedies but nevertheless seeks dismissal of this Petition, BIU will seek leave of the Court to file a sur-reply addressing whatever arguments the Commission makes in its reply.

Dated:  September 7, 2023          Respectfully submitted,

Michael H. Strub Jr.
Amir A. Shakoorian
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801
Email:mstrub@ggtriallaw.com
          ashakoorian@ggtriallaw.com

*Attorneys for Petitioner BIU, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this document complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 655 words, according to the count of Microsoft Word.

Michael H. Strub, Jr.

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing is being filed with the Clerk of the Court using the CM/ECF system, thereby serving it on all parties of record, this 7th day of September, 2023.

Michael H. Strub, Jr.

# EXHIBIT 1



Filed: 09/07/2023    Document #2015694    USCA Case #23-1163

August 25, 2023

BY ECFS

Loyaan A. Egal
Chief, Enforcement Bureau
Federal Communications Commission
45 L St., NE
Washington, D.C. 20554

   Re: *Spectrum Five, LLC – Petition for Enforcement of Operational Limits and for*
     *Expedited Proceedings To Revoke Satellite Licenses*, IB Docket No. 20-399

Dear Mr. Egal,

   Thank you for your August 11, 2023 letter,[1] which offers me an opportunity to respond to the allegations of BIU LLC ("BIU") regarding the actions of Spectrum Five LLC ("Spectrum Five").[2] BIU alleges that the Commission's April 24, 2023, *Order*[3] dismissing Spectrum Five's November 6, 2020, Enforcement Petition[4] was "procured by fraud."[5] BIU further alleges that it is Spectrum Five's "exclusive attorney-in-fact with sole authority to authorize the dismissal of the Petition" and that I was "not authorized to withdraw it."[6] These allegations are false, and the Commission should dismiss the BIU Letter.

---

[1] Letter from Loyaan A. Egal, Chief, Enforcement Bureau, to Samuel L. Feder, Jenner & Block LLP, IB Docket No. 20-399 (Aug. 11, 2023).

[2] Letter from Michael H. Strub, Jr., Counsel for BIU, LLC, to Loyaan A. Egal, Chief, Enforcement Bureau, FCC, IB Docket No. 20-399 (June 9, 2023) ("BIU Letter").

[3] *Spectrum Five LLC Petition for Enforcement of Operational Limits and for Expedited Proceedings to Revoke Satellite Licenses*, IB Docket No. 20-399, Order, DA 23-345 (EB 2023) ("*Order*").

[4] Petition of Spectrum Five for Enforcement of Operational Limits and for Expedited Proceedings to Revoke Satellite Licenses, IB Docket No. 20-399 (filed Nov. 6, 2020) ("Enforcement Petition").

[5] BIU Letter at 1.

[6] *Id.*

To start, I formed Spectrum Five. I worked with the Dutch Authority for Digital Infrastructure (RDI) to secure its spectrum rights at the International Telecommunications Union. I have always been and remain its chief executive. I oversee its business operations, its satellite operations, its financial operations, and its commercial contracts. And I also oversee its legal representation.

Most relevant here, I directed the filing of the Enforcement Petition on November 20, 2020. In this docket alone, I oversaw 16 separate filings on December 14, 2020, December 18, 2020, December 21, 2020, December 22, 2020, January 7, 2021, February 2, 2021, February 4, 2021, February 5, 2021, February 26, 2021, March 18, 2021, June 7, 2021, December 15, 2022, January 19, 2023, and finally April 12, 2023, when I directed Mr. Feder to withdraw the petition. Each time I procured counsel to represent Spectrum Five, and each time I was authorized to do so as Spectrum Five's chief executive with operational control.

These basic facts appear undisputed. In a supplemental letter, BIU makes clear that "BIU did not suggest, nor intend[s] to suggest, that BIU has assumed operational control of Spectrum Five."[7] And BIU reiterated the point in its Petition for Review filed with the court of appeals: "BIU did not assume operational control of Spectrum Five."[8] Nor did BIU notify the Commission that it had assumed control of Spectrum Five or its legal representation at any point while the proceeding was still pending.

Nor could BIU assert control of Spectrum Five. As the attached letter from the Dutch Authority for Digital Infrastructure (RDI) makes clear, Spectrum Five B.V. (Spectrum Five's Dutch affiliate) is organized under the laws of the Netherlands and has an agreement with the Dutch Authority to hold the spectrum rights that form the basis for the Enforcement Petition.[9] It affirms that Spectrum Five is and remains "represented by Mr. David Wilson."[10] And similar to U.S. law requiring FCC approval for transactions, the letter makes clear that "prior written consent of The Netherlands Authority" is required to "transfer to third parties, either in whole or in part, any rights and obligations" under the agreement.[11]

BIU has not received a transfer of any rights or obligations from the Dutch Authority. BIU has not requested a such a transfer. BIU has not represented Spectrum Five before the Dutch Authority. BIU has, in fact, no relationship with the Dutch Authority. As a consequence, it has no right to assert control over Spectrum Five, no right to claim it represents Spectrum Five, no right to hire or fire attorneys on behalf of Spectrum Five, and no right to represent the spectrum rights of The Netherlands in front the United States government or the Federal

---

[7] Letter from Michael H. Strub Jr., Counsel for BIU, to Loyaan A. Egal, Chief, Enforcement Bureau, IB Docket No. 20-399 (June 13, 2023) ("BIU Supplemental Letter").

[8] *BIU LLC v. FCC*, No. 23-1163, Petition for Review (D.C. Cir. filed June 23, 2023).

[9] Letter from Mr. F. Hofsommer, Head of Transport and Aerospace (writing on behalf of the Minister for Economic Affairs and Climate Policy), Dutch Authority Digital Infrastructure at 1 (Aug. 15, 2023) (attached).

[10] *Id.*

[11] *Id.* at 2.

Filed: 09/07/2023    Page 10 of 98

Document #2015694

USCA Case #23-1163

Filed: 09/07/2023     Page 11 of 98

Document #2015694

USCA Case #23-1163

Communications Commission.  Throughout this entire proceeding, the only person authorized to make these decisions was me—including the decision to withdraw the Enforcement Petition.  At no point did Spectrum Five cede authority over key business decisions to BIU or any other party.  The provisions on which BIU relies relate to performance of ministerial functions on Spectrum Five's behalf, such as signing tax filings if required.[12]  But, to my recollection, BIU has not had occasion to perform even such ministerial functions.

But whatever BIU's authority, it asked the Commission to reinstate the Enforcement Petition too late.  Petitions for reconsideration of the April 24, 2023, *Order* were due May 24, 2023,[13] and applications for review of that order were due May 24, 2023.[14]  Accordingly, the Commission need not decide BIU's strained interpretation of control.  BIU's request is untimely, and the FCC can dismiss it as such.[15]

Finally, I feel compelled to personally respond to BIU's scurrilous allegation that I "was compensated by a party-in-interest in the proceeding" to withdraw the Enforcement Petition.[16]  Such an unfounded accusation, offered without a shred of evidence—BIU admits it "do[es] not know" the facts"[17]—has no place before this Commission and does not merit a response.  Nonetheless, I stipulate under penalty of perjury that I received no such compensation and directed Mr. Feder to withdraw the petition because I believed it was in the best interest of Spectrum Five.

Sincerely,

R. David Wilson
Chairman & CEO
Spectrum Five
2445 California St. NW
Washington, DC  20008

---

[12] Although BIU asserts that the loan was in default on August 1, 2021, Spectrum Five disputes that fact and believes that BIU had breached its agreements with Spectrum Five before that point—but the Commission need not address that issue.  That's because even if BIU were correct, neither the Security Agreement nor the Pledge Agreement confers exclusive powers or sole authority to BIU to make decisions on Spectrum Five's behalf.  *See* BIU Letter Att. F § 3.4; *id.* Att. H § 6.

[13] 47 C.F.R. § 1.106(f).

[14] 47 C.F.R. § 1.115(d).

[15] The Commission could also dismiss the letter as procedurally improper for failing to conform to the requirements of the Commission's rules.  *See* 47 C.F.R. §§ 1.49, 1.51, 1.52, 1.106, 1.115.  BIU's inability to conform with these basic requirements is not surprising given BIU believes there are eight FCC Commissioners.  BIU Letter at n.2.

[16] BIU Letter at 1-2.

[17] *Id.*

# Attachment



Dutch Authority for Digital
Infrastructure
*Ministry of Economic Affairs and
Climate Policy*

> Return address P.O. Box 450 9700 AL  Groningen, The Netherlands

Spectrum Five B.V.
Locatellikade 1
1076AZ Amsterdam
The Netherlands

email: rhashem@mololamken.com
rdw@spectrumfive.com

Emmasingel 1
PO box 450
9700 AL  Groningen
The Netherlands
T +31 (0)88 0416000
www.rdi.nl
info@rdi.nl

**Contact**

T +31 (0)88 0416000

**Our reference**
RDI-EZK/8465029

**Your reference**
-

**Enclosures**
-

Date       15 August 2023
Subject   Supporting letter

To whom it may concern,

The Netherlands administration, in this matter represented by the Dutch Authority
for Digital Infrastructure (RDI), confirms that Spectrum Five B.V. (SF) which is
represented by Mr. David Wilson, is a company under the laws of the Netherlands
with whom the RDI has a formal agreement with. SF is registered at the
Netherlands Chamber of Commerce under reference ID 75785471. We further
recognize that SF is a company that is registered in the Netherlands and is a
Netherlands based satellite operator. The activities of SF are subject to European
and National law.

Under the Netherlands regulations, only a notifying administration can submit a
filing in the ITU frequency filing process. Therefore, based on an agreement
between SF and RDI, SF can request the RDI to submit ITU network filings.
Whenever those filings are considered as favourable filings by the ITU, the
agreement gives SF the exclusive right to use the filings. The RDI remains the
rightsholder of those filings and is to act as an intermediary between involved
organizations, administrations and SF, as far as it concerns technical frequency
aspects.

These filings are subject to completion of the relevant coordination and
notification under the applicable ITU Radio Regulations, and subject to compliance
with relevant Netherlands regulations and legislation in this regard.

As stated in Article 31 of the agreement between SF and RDI, SF shall not without prior written consent of the Netherlands Authority transfer to third parties, either in whole or in part, any rights and obligations as concluded in this Agreement. SF at all times shall remain ultimately responsible for all transferred rights.

Yours sincerely,
on behalf of
The Minister for Economic Affairs and Climate Policy,

Mr. F. Hofsommer
*Head of Transport and Aerospace*
Dutch Authority Digital Infrastructure

# EXHIBIT 2



Michael H. Strub Jr.
Direct Dial: (949) 383-2770
MStrub@GGTrialLaw.com

September 5, 2023

**VIA ECFS**

Loyaan A. Egal
Chief, Enforcement Bureau
Federal Communications Commission
45 L Street, N.E.
Washiington, D.C.  20554

> Re:   **April 24, 2023 Order Dismissing Petition for Enforcement of Operational
> Limits and for Expedited Proceedings to Revoke Satellite Licenses, IB
> Docket 20-399**

Dear Mr. Egal:

We write on behalf of BIU, LLC ("BIU") to respond to R. David Wilson's August 25, 2023 letter,[1] which he submitted in response to your August 11, 2023 letter directed to his counsel, Samuel L. Feder at Jenner & Block LLP.

Other than making the conclusional statement that he disputes the fact that Spectrum Five is in default on the BIU Loan,[2] Wilson Letter at 3 n.12, Mr. Wilson does not respond to the central points in BIU's Letter.  BIU has been funding these proceedings for almost three years; Spectrum Five has failed to repay BIU; and, as a consequence, Spectrum Five irrevocably designated, made, constituted, and appointed BIU as Spectrum Five's true and lawful attorney-in-fact pursuant to Section 3.4 of the Security Agreement[3] and Section 6 of the Pledge Agreement.[4]

Mr. Wilson approved the power-of-attorney language and acknowledged that it did not constitute a change of control under the Agreement.  He offers no explanation as to what rights

---

[1] Letter from R. David Wilson to Loyaan A. Egal, Chief, Enforcement Bureau, Federal Communications Commission, IB Docket No. 20-399 (Aug. 25, 2023) (the "Wilson Letter").

[2] Capitalized terms not defined herein are defined in the June 9, 2023 letter from Michael H. Strub, Jr. to Loyaan A. Egal, Chief, Enforcement Bureau, Federal Communications Commission, IB Docket No. 20-399 (the "BIU Letter").

[3] BIU Letter Att. F.

[4] BIU Letter Att. H.

**Greenberg Gross LLP**

Loyaan A. Egal
September 5, 2023
Page 2

BIU's power-of-attorney conveys; if it does not convey the right to protect BIU's investment, it is useless. "It is a fundamental principle of contract interpretation that a contract should be interpreted so as to give meaning to each of its provisions." *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.*, 205 F.R.D. 1, 11 (D.D.C. 2000).

Mr. Wilson relies exclusively on an August 15, 2023 letter from Mr. F. Ofsommer on behalf of the Netherlands Authority,[5] which he says confirms his authority to instruct Mr. Feder to withdraw the Petition. Mr. Ofsommer, however, does not say this, nor does it say this in the agreement between the Netherlands and Spectrum Five that he references.

Attached to this letter as Exhibit 1 is the 2007 "Agreement between the State of the Netherlands, the Government of the Netherlands Antilles, Spectrum Five LLC and Spectrum Five BV i.o." (the "License Agreement"). The copy of the agreement that BIU received is largely illegible, so we have attached as Exhibit 2 the prior 2004 Agreement, which is substantively identical. Article 31, which Mr. Ofsommer references, is part of Section 7, which governs "Landing Rights." It provides that:

> Spectrum Five shall not without the prior written consent of the Netherlands Authority transfer to third parties, either in whole or in part, any rights and obligations as concluded in this Agreement. Spectrum Five at all time [sic] shall remain ultimately responsible for all transferred rights.

The Agreement gives Spectrum Five an exclusive license to use the 95° W.L. slot to **operate** a satellite. It does not say that Spectrum Five has the exclusive right to control the administrative or litigation process by which it protects those rights. This is confirmed by Article 32, which is in the same section of the Agreement, and states that:

> Spectrum Five shall not without the prior written consent of the Netherlands Authority subcontract or otherwise **transfer the operational control of any of the space object(s)**, including the TT&C centre, or authorise, cause or permit performance of the space activities by another entity. Not withstanding the preceding sentence, the Parties hereby agree that Spectrum Five LLC will subcontract space activities concerning the building and the launching. Spectrum Five at all time [sic] shall remain ultimately responsible for all subcontracted and leased activities.

---

[5] Letter from Mr. F. Hofsommer, Head of Transport and Aerospace (writing on behalf of the Minister for Economic Affairs and Climate Policy), Dutch Authority Digital Infrastructure, Wilson Letter, Att.

**Greenberg Gross LLP**

Loyaan A. Egal
September 5, 2023
Page 3

Emphasis added.

Article 30 provides that Spectrum Five "shall apply for U.S. landing rights on its own account" and that the Netherlands Authority will support those efforts. That is the only portion of the Agreement that relates in any way to proceedings before the FCC.

Given that Mr. Ofsommer's letter was sent after the Enforcement Bureau asked Mr. Feder to respond to the BIU Letter, he certainly could have said clearly that Mr. Wilson had the exclusive ability to withdraw the Petition or that the Netherlands Authority supported his decision to do this. He did not.

The rights at issue are BIU's only collateral for economic interests worth hundreds of millions of dollars. Mr. Wilson's equity economic interest in Spectrum Five is subsidiary to the holders of debt in BIU. Mr. Wilson states that he was not compensated for instructing Mr. Feder to withdraw the Petition, but there was a reason that he did so, and it is reasonable to assume that it was financially beneficial for him to do this.

The facts that led to the withdrawal of the Petition further belie Mr. Wilson's assertion that he gave this instruction solely because he "believed it was in the best interest of Spectrum Five." Wilson Letter at 3. The Petition was originally filed by MoloLamken LLP, who was well aware of BIU's power-of-attorney. Mr. Wilson, however, instructed Mr. Feder to withdraw it and never informed him about the power-of-attorney. If Mr. Wilson's instruction to withdraw the Petition was above board, Mr. Feder presumably would have responded himself to the allegations in the BIU Letter that the Petition was procured by fraud and also would have explained why the decision was made. Apparently, Mr. Wilson not only defrauded the Commission, he misled his attorneys as well.

Most telling of all is that Mr. Wilson offers the Commission no explanation as to why he instructed Mr. Feder to withdraw the Petition or why he did so surreptitiously. BIU has sought, unsuccessfully, to get Mr. Wilson to explain his action, and he has never done so.

BIU seeks the most reasonable and efficient opportunity to understand the reason for Mr. Wilson's actions and whether others were complicit to permit it to defend its rights. The Commission should have a common interest. Without such a reasonable explanation through a continuation of proceedings before the FCC, BIU will have no choice but to pursue other, more complicated, less attractive litigation.

As BIU said in its June 9 letter, at issue is the integrity of the proceedings before the Enforcement Bureau. The Enforcement Bureau should not allow Mr. Wilson to unilaterally withdraw the Petition under these fraudulent circumstances. It should set aside the Order, reinstate the Petition, and reopen the docket.

**Greenberg Gross LLP**

Loyaan A. Egal
September 5, 2023
Page 4

Respectfully submitted,

Michael H. Strub, Jr.

Attachments
cc:    See attached service list

      Jonathan S. Kanter (jonathan.kanter@usdoj.gov)
      Robert B. Nicholson (robert.nicholson@usdoj.gov)
      Matthew C. Mandelberg (matthew.mandelberg@usdoj.gov)
      P. Michele Ellison (michele.ellison@fcc.gov)
      Jacob M. Lewis (jacob.lewis@fcc.gov)
      Adam L. Sorenson (adam.sorensen@fcc.gov)

# EXHIBIT 1

## Agreement between the State of the Netherlands, the Government of the Netherlands Antilles, Spectrum Five LLC and Spectrum Five BV

### Parties

1.     The State of the Netherlands, which has its seat in The Hague, represented on behalf of the Minister of Economic Affairs by:

   a. Dr. F.A. Post, Deputy Director-General of the Directorate-General for Energy and Telecommunications, hereinafter also referred to as 'the Netherlands Authority', and by
   b. Ms. M.G. Schrour, Managing Director/Chief Inspector of the Radio Communications Agency, hereinafter also referred to as 'the Radio Communications Agency';

2.     The Government of the Netherlands Antilles, which has its seat in Willemstad/Curacao, represented by Ing. D. de Cunha, Director of Bure. Telecommunication and Post, hereinafter referred to as the Netherlands Antilles'

3.     Spectrum Five LLC, which is registered as a Delaware limited company with its business office located in Washington D.C. represented by David Wilson, President.

       Spectrum Five BV, a Netherlands Corporation with its business located in the Netherlands, represented by David Wilson, president. Spectrum Five LLC and Spectrum Five BV may throughout this Agreement separately and collectively be referred to as "Spectrum Five"

### Additional Orbital Positions

Additional Filings shall mean

Filings with the ITU in respect of the following orbital positions

Modification of the BSS Plan for Region 2 (Appendix 30 and 30A)

SP BSS5 114.5 W 12.17 GHz

Allocation to Region 2 for the BSS 14.5 degree sp (ring)



| | |
|---|---|
| BSSNET 96.5°W | 17/25 GHz |
| BSSNET 101°W | 17/25 GHz |
| BSSNET 103.5°W | 17/25 GHz |
| BSSNET 110°W | 17/25 GHz |
| BSSNET 114.5°W | 17/25 GHz |
| BSSNET 119°W | 17/25 GHz |

Allocation in Region 2 for the BSS (4 degree spacing)

| | |
|---|---|
| BSSNET2-95°W | 17/25 GHz |
| BSSNET2-99°W | 17/25 GHz |
| BSSNET2-103°W | 17/25 GHz |
| BSSNET2-107°W | 17/25 GHz |
| BSSNET2-111°W | 17/25 GHz |
| BSSNET2-115°W | 17-25 GHz |
| BSSNET2-119°W | 17/25 GHz |

Considering

...

...

...

(f) that these satellites shall target the USA broadcasting market, including the local-to-local television market, DTH and DBS services;

g) that these satellites shall utilize state of the art spot beam technology and if appropriate concave beam technology, with a sufficient number of beams to satisfy the coordinates required by the service provision under consideration additional granted in different local stations in the USA;

i) that the wording in the section (f) has been either small, deleted;

g) that in order to assign the Additional Filings to spectrum five, a non transfer coordination was initiated and filing in each of the Additional Filings with the FCC that is requested. In the avoidance of doubt, as it is technically impossible to simultaneously operate both sets of filing jointly one of the two filed degree plans will be requested and be done operational in respect of the satellite under each of the Additional Filings (see section f(h));

h) that Spectrum Five has requested the State of the Netherlands to file the Additional filings with the ITU for coordination reasons and for future extension of Spectrum five's satellite network;

i) that according to the ITU Radio Regulations the State of the Netherlands is the administration responsible for discharging the ITU obligations in relation to the operation of this Agreement;

j) that the State of the Netherlands for the purpose of this Agreement may act as the coordination and notifying agent to economic entities concerning general telecommunication policy and bilateral treaties concerning international telecommunications with respect to the United States Government Affairs;

k) that the Government of the Netherlands Antilles for the purpose of this Agreement may use the Bureau Telecommunication and Post (BTP), as part of the Minister of Traffic and Transport, for specific matters concerning the Netherlands Antilles;

l) that the State of the Netherlands on a voluntary basis is willing to support the commitment of the Additional Filings to the ITU under the circumstances and conditions declared hereafter;

m) that the Additional Filings will be done by the Radio Communications Agency, an exclusive use for each of the specific conditions, specific frequencies and specific services to respect of these Additional Filings for the benefit of Spectrum five;



c) that the Ministry of Economic Affairs currently is studying the establishment of an amendment of the Netherlands Telecommunications Act with regard to the introduction of a licensing regime for the use of radio frequencies for space to earth communication, in addition to the existing licensing regime for the use of frequencies for communications from earth to space (hereinafter the "Satellite Licensing Regime");

that under the Satellite Licensing Regime additional licences may be needed to under the provisions covered in this Agreement and therefore Spectrum Five may be subjected to the Satellite Licensing Regime, the licences will be granted by the Ministry of Economic Affairs of the Netherlands to Spectrum Five according to the provisions of relevant legislation in force as soon as possible, providing there are no statutory restrictions to issue these licences. The State of the Netherlands reserves the right to impose additional terms and conditions in the licence that will be issued under the Satellite Licensing Regime;

that signing this Agreement by all parties concerned implies that these parties agree on all following issues concerning this Agreement on the date on which it is signed.

Stating.

§I. General

Article 1

Spectrum Five Ltd. has incorporated in written, with novel subsidiaries Spectrum Five BV, Spectrum Five BV shall be pursuant to the operation by Spectrum BV Netherlands and Netherlands Antilles registration activities, as well in connection with this Agreement.

This undertaking shall at least consist of the establishment of the Tele-operating and Control centre (TT&C), i.e. a system that monitors corrects, including of the technical parameters and controls the partial or complete use own of a satellite network, to the Netherlands Antilles or to the other analysis corresponding to the orbital position and satellites and fixed by the Radio Communications Agency.

Article 2

Spectrum Five is issued by the Law of the Netherlands and the Netherlands Antilles.

RAW

### Article 3

Operation by Spectrum Five of geostationary orbital locations and assigned frequency bands shall comply with the ITU Radio Regulations and where and to the extent applicable to private parties such as Spectrum Five, with other relevant international treaties to which the Sate of the Netherlands and the Government of the Netherlands Antilles are signatories.

### Article 4

Spectrum Five shall comply with the obligations resulting from the ITU Treaty and where and to the extent that is applicable to private parties such as Spectrum Five, with relevant international treaties to which the State of the Netherlands and the Government of the Netherlands Antilles are signatories.

### Article 5

Spectrum Five shall in good faith pursue its best efforts to construct, launch and insure the satellites under consideration (re) within a reasonable period of time.

### §2. Notifying Administration

### Article 6

The State of the Netherlands accepts the responsibility concerning the notification to the international coordination examination and registration (names) of the Spectrum networks in the ITU AR.

### Article 7

The Radio Communications Agency will notify to the relevant use of Spectrum Five of each of the geostationary locations and frequencies of the filed data on behalf of the Spectrum Five and act as the Notifying Administration for Spectrum Five for each of the orbital positions covered by the Additional Filings.

### Article 8

Prior to the submission of each of the additional filings with the ITU, the relevant geostationary locations with regard to the specific frequency restrictions and services of the Netherlands filings will be assigned to Spectrum Five. This usage relates to the

RAW

become of the first operational satellite and the lifetime of any additional or replacement satellites placed in this location, launched within five years from the launch of the first operational satellite. Renewal of this period can be applied for and will not unreasonably be withheld

### Article 9

The wording in this Article 9 has been intentionally deleted

### §3  Coordination meetings negotiations

### Article 10

The State of the Netherlands will be represented in coordination organization in its own Authority by the Radio Communications Agency

### Article 11

The Radio Communications Agency is the liaison between involved organisations and administrations and Spectrum Five BV in so far as it concerns technical (technical) aspects

### Article 12

The Radio Communications Agency organises, coordinates in its own authority, the necessary coordination meetings between organisations, administrations, spectrum spectrum Five BV on reasonable terms as soon as possible.

### §4  Costs incurred

### Article 13

1. The Radio Communications Agency works on a month of approach Involvement of the Radio Communications will be calculated
   - by charging a yearly lump sum,
   - for coordination activities calculation will take place per hour per person, miscellaneous expenses will be charged separately;

2. A bill of all expenses made and hours spent for coordination activities for Spectrum Five BV will be drawn up every three (3) months by the Radio Communications Agency and will be presented to Spectrum Five BV in concern. Any invoice is will be paid by spectrum five BV within four (4) weeks.

?hw

after receipt of the invoice

The lump sum and the charges for working hours relating to exception that which are subject to a yearly review. The Radio Communications Agency will keep Spectrum Five LLC informed of changes in the cost calculation.

### Article 13

The CTU sends invoices for the Cost Recovery and Spectrum Network charges to the Radio Communications Agency for payment.

By the payment, the Radio Communications Agency will indemnify Spectrum Five LLC of the amount. When both the Radio communications Agency and Spectrum Five LLC agree with the invoice, the Radio Communications Agency will reimburse the amount due to the CTU. The costs for CTU Cost Recovery will be included in the quarterly amounts to expenses to Spectrum Five LLC.

If in case Spectrum Five LLC is not in agreement with the charges of CTU, Recovery invoiced CTU does not agree to repair that portion. The invoice will then be returned, where no agreement can be reached shall be indemnified or invoiced to Spectrum Five LLC.

The Radio Communications Agency bears no risk in the event of a dispute between Spectrum Five LLC and the CTU regarding payments towards the costs determined by the CTU nor be liable for paying the invoice in cases concerning the actions including the cost of the Radio communications Agency any act will be conducted by Spectrum Five LLC.

### Article 14

Spectrum Five guarantees payment to the Radio communications Agency of the fees and Administrative costs and any credits relating to the filing of the Administrative filing.

Spectrum Five shall be surety for the payment of the costs connected to the related to this article, to the amount of CZK 500000, in regard to the of filing this filing.

### Article 15

Spectrum Five LLC makes payment of the costs, according to Articles 13, 14 and 15 to meet the obligations as laid down in Articles 15 and 16. Before a procedure can be stopped under which the continuation is suppressed. Before the filing procedure is stopped or before the costs are

suppressed, the Radio Communications Agency shall give Spectrum Five LLC written notice of its failure to meet such obligations and offer Spectrum Five LLC a reasonable period of time, which will be no less than four (4) weeks from sending of such notice, to remedy such failure to the satisfaction of the Radio Communications Agency.

§5. Issues related to Space Activities

Article 17

It is expressly acknowledged that the provisions of this Agreement concerning the filing and utilization of the orbital location conveyed to the Administration/filings owner do not scope of the Netherlands Space Activities Act. Surgeon of the preparing position from Spectrum Five or Services for valid all Space activities to be defined in the licensed under Space Activities Act, as are short-term or may in accordance with best practices in the course and any and every concurrence with the International Net relationship and he between us and by any other concurrence under the Netherlands and the international court may entail to issue the technical administrations/appropriate regulatory part to one Spectrum Five or to a particular Spectrum Five under mate.

-  to conduct its operations and evade the risk of contamination of outer space or adverse changes in the environment of the earth or a repository in its health or the subsurface, thereof reports on any part of its world, in concert with its activities and all its life or the peaceful exploration of the outer space.

-  to collect no communications or other broadcasting under the Netherlands under the Outer Space.

Article 18

Spectrum Five shall indemnify the State of the Netherlands and the Government of the Netherlands against any claims according to international law brought against the State of the Netherlands or the Government of the Netherlands Antilles in respect of damage or loss arising out of Space Activities (as defined in the Netherlands' Space Activities Act) carried out by Spectrum Five except for those damages arising from the negligence or intentional act of the State of the Netherlands or the Government of the Netherlands Antilles or its agencies.

Article 19

Spectrum Five shall indemnify and defend against all liabilities that may arise in respect of claims for loss or liability of any third parties, in the Netherlands, the

Netherlands Antilles or elsewhere, as a result of Space Activities (as defined in the Netherlands Space Act) other Acts) carried out by Spectrum Five. This obligation shall be satisfied by a policy of insurance under which Spectrum Five is the named insured and the State of the Netherlands and the Government of the Netherlands Antilles will be named as additional insured parties. Notwithstanding the foregoing, the Parties hereby understand and agree that the insurance described herein is for the Space Activities as defined in the Netherlands Space Activities Act) and therefore shall not be obtained until the commencement of such Space Activities (as defined in the Netherlands Space Activities Act). The State of the Netherlands and the Government of the Netherlands Antilles will receive a transcript of the annual or interim policy, including the terms and conditions of coverage, and a copy of the payment of the premium no less than 30 days prior to the date of entry of that policy.

### Article 20

Spectrum Five shall immediately notify the State of the Netherlands and the Government of the Netherlands Antilles of any event or other occurrence that is likely to give rise to a claim under any of the policies of insurance effected by Spectrum Five.

### Article 21

Parties agree that the Space Activities (as defined in the Netherlands Space Act) (and Act) of Spectrum Five can be subject to separate licensing requirements under the Netherlands Space Activities Act or other future applicable national space legislation. Any requisite licenses will not be unreasonably withheld. Insofar as required under the Netherlands Space Act) (or any other future applicable national legislation, one Party or the Parties agree to provide any authorisation required for the space object itself, to the extent such of the Netherlands has not got permission to do so and has done that it is in status of system is for and/or these concerns.

### §6. Benefits to the Netherlands Antilles

### Article 22

Spectrum Five shall extend Netherlands Antilles TV and Radio signals throughout the island chain and efficiently by focussing satellite spot beam).

### Article 23

Spectrum Five shall provide one channel of TV capacity to the Netherlands Antilles which will have full access to the USA satellite TV market. This channel could be used



in the Netherlands Antilles discretion to promote industry, trade, banking, and other institutional opportunities to the most lucrative viewing audience in the world.

## Article 24

Spectrum Five shall locate, build and operate Spectrum Five's Satellite Telemetry Tracking and Control (TT&C) centre in the Netherlands Antilles.

## Article 25

Spectrum Five shall locate, build and operate a satellite feeder link in the Netherlands Antilles to feed distance learning and TV programming to the satellite.

## Article 26

Spectrum Five shall support educational opportunities through satellite classes, distance learning as seen throughout the islands. The Spectrum Five satellite will transmit educational services to the Netherlands Antilles most remote villages. Additionally, lectures would be available at home so long as an individual has a dish and a receiver. It is understood that Spectrum Five will provide the facilities for said transmissions, but actual content will be provided by the Netherlands Antilles.

## Article 27

Spectrum Five shall sponsor an annual local college scholarship for a student undertaking an engineering and/or science major in space communications.

## Article 28

Spectrum Five shall support Bureau Telecommunication and Post of the Netherlands Antilles to improve and update its knowledge of satellite communications.

## Article 29

Resources covered by these benefits will be placed at the disposal of the Netherlands Antilles during the full lifetime of the satellite. This siting implies the licences that are needed to bring these benefits in operation, these licences based on the Telecommunications Act 1996 shall be granted by the Minister of Traffic and transport of the Netherlands Antilles to Spectrum Five. Additionally, the Netherlands Antilles will, provided under current or future regulation, all other authorizations, licenses and permits necessary to build the TT&C centre and to provide services in the Netherlands Antilles.

## §7. Landing rights

Article 38

Spectrum Five shall apply for lanning rights on its own account. In case of later treatment by the the USA FCC or by any other body receiving application for lending rights of system in Fra in comparison to other applications this at the judgement of the State of the Netherlands, it may send a letter of support, and in the case of the US V FCC it will send a letter. Support

§8   transfer of rights

Article 41

Spectrum Five shall not without the prior written consent of the State of the Netherlands transfer to third parties, either in whole or in part, any rights and obligations as contained in this Agreement. Spectrum Five at all time shall remain ultimately responsible for transferred rights

Article 42

Spectrum Five shall not transfer the operational natural of any of the space objects and during the ITAA concerns in the Netherlands in alles to anyx her to another in the United Kingdom without without prior written consent of the State. The authorities shall under the operation of rights loss of the space objects, including other GSC state of authorize, use or permit to perform the of the Space Act rules. to other crops not withstanding the preceding sentence the Parties hereby agree that Spectrum Five Ltd of subcontract. Space Systems as contractors the holding and the assuming Spectrum Five at all time shall remain commercially responsible for its subcontractual based services.

§9. Continuation of the filing procedure, progress report and information

Article 33

Spectrum Five shall submit a progress report to the Radio Communications Agency every four months, starting 1 September 2007. Such report will contain the status of the obligations of the spectrum Five satellite network as well as the final state of the satellite. Besides it will contain information as associated with the anticipated schedule of the construction of the satellite concerning of the launcher the anticipated launch window and the insurance scheme under which the satellite will be launched and operated. The report will be handled strictly confidential between the signing Parties subject



Section 2 of this article

The Radio Communications Agency will handle such report strictly confidential, unless the Public Access Act or article 68 of the Constitution prescribing otherwise. Prior to the public disclosure of any part of the report, or of any information contained in the report, the Radio Communications Agency shall give Spectrum Five LLC written notice of its intention to make such public disclosure, and shall give Spectrum Five LLC at least 10 days from the date of such notice to present reasons why such disclosure is not required under the Public Access Act.

3.  In the interests of clarity, Spectrum Five shall get the contents of such report third parties as business secrets.

Article 33A

The State of the Netherlands shall be informed by Spectrum Five LLC of any change in the ownership of Spectrum Five LLC or its Netherlands based subsidiary.

§10. Termination and applicable law

Article 34

1.  The State of the Netherlands is entitled to terminate the Agreement immediately and remove code, give all compensation damages, without any right of Spectrum Five, in case the State of the Netherlands terminates the Agreement on grounds attributable to the State of the Netherlands, if:

   a.   it turns out evident that what comes against the Agreement to appear and that Spectrum Five would have been the other side with a correct state, and that Spectrum would held certain information, if it had been a misrepresentation of facts, and the State of the Netherlands, in case it would have been aware of the correct information and facts, would not have entered into the Agreement on different conditions.

   b.   Spectrum Five LLC makes a filing for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code or a filing for bankruptcy or insolvency of Spectrum Five is made;

   c.   Spectrum Five acts in violation of the provisions of article 12.

   d.   this is required for compliance with a binding decision of an institution of the European Union or for compliance with conventions and decisions of international (regulations) which are binding on the Netherlands;

   e.   this is necessary in the context of the radio frequency spectrum policy of the Netherlands.



there is a justifiable fear that keeping this Agreement in effect would seriously jeopardise the security of the State or the Netherlands or the Netherlands public order;

the grounds on which the Agreement was signed have ceased to exist;

maintaining the Agreement would significantly restrict real expenditure by the Government in the Netherlands.

Notwithstanding the conditions set in Section 1 of this article, the State of the Netherlands is entitled to terminate the Agreement, with respect to a particular satellite orbital location and frequency covered by the Additional Appendix, immediately upon notice under general principles of law without payment of Prudent compensation on behalf of Spectrum Five unless the Government illegally or unreasonably terminated in case where the Netherlands in respect to that particular satellite orbital location and frequency:

a.    the failure to operate orbital position schedule III — is in accordance with;

b.    Spectrum Five acts in violation with the provisions of article 10;

c.    Spectrum Five acts in violation with the provisions of article 11;

d.    Spectrum Five has/has breached one or more of the agreements contained in the Agreement;

e.    Spectrum Five or any other who caused a full discharge under an Agreement.

In case of any of the circumstances described in subparagraphs a, b, c, d, and e of section 2 above, the State of the Netherlands shall notify Spectrum Five in writing from notification and his intentions to terminate the Agreement, and notice and the reason.

Notwithstanding the other provisions of this Agreement or parties thereto in respect of full termination and requirements, such a long term under this Agreement shall commence all obligations and matters in respect of all advantages the terminated.

If this Agreement is terminated immediately in section 1 the Netherlands and by law according to respect 2 above, the Netherlands Authority may compensate otherwise associated with the Additional Appendix, and to amend right of terminal improvisation, that when of Spectrum Five unless the Netherlands or Spectrum Five located within to that such an available position as the case may be to the benefit of the Netherlands.

Article 14.1

of one or more provisions, laid down in this Agreement, cease to be outstanding, the parties will amend this Agreement in such a way that the Agreement no longer will contain non-binding provisions and the objectives of this Agreement will be upheld.

### Article 35

The State of the Netherlands will never be liable for any damages apart from direct damages. Any liability of the State of the Netherlands for indirect damages, immaterial damages or any kind of punitive damages are hereby excluded.

### Article 36

This Agreement shall exclusively be governed by Dutch law.

### Article 37

Any dispute of whatever nature or scope shall be submitted only to the competent court in the The Hague District.

Stated and signed

I         The State of the Netherlands

Location: The Hague, the Netherlands
Date      26 July 2007
Deputy Director-General
Directorate-General for Energy and Telecommunications
Dr. P.A. Boot

Location: Groningen, the Netherlands
Date   26 Juli 2007
Managing Director Chief Inspector
Radio Communications Agency
Ms. M.G. Schreur

The Government of the Netherlands Antilles

Location: Willemstad, the Netherlands Antilles
Date   6 August 2007
Director
Bureau Telecommunication and Post
Ing. J.D. de Garita

Spectrum Five LLC

_R. David Wilson_

Location Washington DC USA
Date July 29 2002
President
R David W·

Spectrum Five BV

_R. David Wilson_

Location. Washington, D.C., USA
Date July 29, 2002
President
R. David Wilsen

# EXHIBIT 2

**Agreement between the State of the Netherlands, the Government of the Netherlands Antilles, Spectrum Five LLC and Spectrum Five BV i.o.**

**Parties**:

1.  **The State of the Netherlands,** which has its seat in The Hague, represented on behalf of the Minister of Economic Affairs by:
    a.  Dr. G.A.A.M. Broesterhuizen, Deputy Director-General of the Directorate-General for Telecommunications and Post, hereinafter referred to as 'the Netherlands Authority'; and by
    b.  Ms. M.G. Schreur, Managing Director Chief Inspector of the Radio Communications Agency, hereinafter referred to as 'the Radio Communications Agency',
2.  **The Government of the Netherlands Antilles,** which has its seat in Willemstad Curacao, represented by Ing. J.D. de Canha, Director of Bureau Telecommunication and Post, hereinafter referred to as 'the Netherlands Antilles',
3.  **Spectrum Five LLC,** which is registered as a Delaware limited liability company with its business office located in Arlington, Virginia, USA, represented by David Wilson, president, and
4.  **Spectrum Five BV i.o.,** a Netherlands Corporation with its business office located in the Netherlands, represented by David Wilson, president. Spectrum Five LLC and Spectrum Five BV i.o. may throughout this Agreement separately and collectively be referred to as "Spectrum Five".

**Considering**:

a) that the planning of the Broadcasting Satellite Service (BSS) according to Appendix 30 of the ITU Radio Regulations assumes Ku-band analogue transmission techniques locating satellites on positions with 9° spacing;

b) that digital transmission techniques may allow reduction of this spacing to 4.5° creating additional satellite positions ('tweeners');

c) that Spectrum Five is planning to construct, launch and locate a dedicated satellite for the orbital position 114.5° West;

d) that this satellite will target the US.A. 'local-to-local' television market;

e) that this satellite will utilize state of the art spot beam technology with a sufficient number of beams to satisfy the conditions required by the service provision under consideration d. and pointed at different local regions in the U.S.A.;

1

f) that the U.S.A. Local Television Loan Guarantee Program may contribute substantially to the financing necessary to construct, launch and insure this satellite;

g) that in order to assign the orbital position 114.5° W to Spectrum Five a notification, coordination, examination and registration (filing) of the orbital position 114.5° W with the ITU-BR is required;

h) that Spectrum Five requested the State of the Netherlands to file the orbital position 114.5° W with the ITU;

i) that according to the ITU Radio Regulations the State of the Netherlands as relevant administration is responsible for discharging the ITU obligations in relation to the subject of this Agreement;

j) that the State of the Netherlands for the purpose of this Agreement involves the Directorate Telecommunications and Post concerning general telecom affairs and the Radio Communications Agency concerning operational telecom affairs, both part of the Ministry of Economic Affairs;

k) that the Netherlands Antilles for the purpose of this Agreement involves the Bureau Telecommunication and Post (BTP), as part of the Ministry of Traffic and Transport, for specific matters concerning the Netherlands Antilles;

l) that the State of the Netherlands on a voluntary basis is willing to support the submission of such a filing to the ITU under the circumstances and conditions declared hereafter;

m) that this filing will be done by the Radio Communications Agency in an exclusive way for this specific location (114.5° West), specific frequency (Ku-band) and specific service (BSS Region 2) for the benefit of Spectrum Five;

n) that benefits, on behalf of the Netherlands Antilles, are connected to the filing ;

o) that licences may be needed to bring these benefits in operation[1]; these licences will be granted by the Minister of Traffic and Transport of the Netherlands Antilles to Spectrum Five under current or future regulation as soon as possible;

---

[1] For the use of frequencies for the purpose of a satellite earth station a license from the Minister of Traffic and Transport of the Netherlands Antilles is required. No licence is required for Receive-only terminals. Information is to be provided on an application form which can be obtained from BTP. The

2

p) that the Netherlands Authority is drafting a national space law regulating space activities;

q) that licences may be needed to launch and operate the satellite; these licences will be granted by the Minister of Economic Affairs of the Netherlands to Spectrum Five according to the relevant legislation in force as soon as possible;

r) that signing this Agreement by all parties concerned implies that these parties agree on all following issues commencing this Agreement on the date on which it is signed.

---

necessary licenses will be provided by the Minister of Traffic and Transport of the Netherlands Antilles (BTP) within the regulatory framework (inclusive timeframe).

3

**Stating**:

**§1. General**

**Article 1**
Spectrum Five LLC shall incorporate a Netherlands-based Subsidiary (named Spectrum Five BV) and the Subsidiary shall be responsible to Spectrum Five LLC for all Netherlands and Netherlands Antilles regulatory activities, as well as compliance with this Agreement.

**Article 2**
Spectrum Five is bound by the Law of the Netherlands and the Netherlands Antilles.

**Article 3**
Operation by Spectrum Five of geostationary orbital locations and assigned frequency bands shall comply with the ITU Radio Regulations.

**Article 4**
Spectrum Five shall comply with the obligations resulting from the ITU Treaty.

**Article 5**
Spectrum Five shall in good faith pursue to seek finance to construct, launch and insure the satellite as qualified under consideration e. within a reasonable period of time.

**§2. Notifying Administration**

**Article 6**
The State of the Netherlands accepts the responsibility concerning the procedure of notification, co-ordination, examination and registration (filing) of the Spectrum Five networks to the ITU-BR.

**Article 7**
The Radio Communications Agency will notify for the exclusive use of the geostationary location of 114.5° W in the BSS Region 2 Plan to the ITU-BR on behalf of Spectrum Five and act as the Notifying Administration for Spectrum Five.

**Article 8**
Parties agree that after completion of the filing with the ITU-BR, the geostationary location 114.5° W, with regard to the specific frequency(ies) and service(s), will be assigned exclusively to Spectrum Five. This exclusive use is related to the lifetime of the first operational satellite and the lifetime of any additional or replacement satellites

4

placed at this location, launched within five years from the launch of the first operational satellite. Renewal of this period can be applied for and will not unreasonably be withheld.

**Article 9**
After confirmation of receipt of the notification by ITU-BR, the Radio Communication Agency will request the Australian Authority to suppress the AUSSAT-5 filing, as already was agreed in previous discussions between the Authorities of the Netherlands and Australia.

**§3. Coordination meetings/negotiations**

**Article 10**
The State of the Netherlands will be represented in co-ordination negotiations with foreign Authorities by the Radio Communications Agency.

**Article 11**
The Radio Communications Agency is to act as an intermediary between involved organisations and administrations and Spectrum Five as far as it concerns technical frequency aspects.

**Article 12**
The Radio Communications Agency is to take part in frequency technical meetings and negotiations with other Government Agencies concerning frequency aspects. Spectrum Five will be invited to attend all such meetings.

**§4. Costs incurred**

**Article 13**
Spectrum Five guarantees payment to the Radio Communications Agency and the Netherlands Antilles of all costs involved in relation to the filing of Spectrum Five's satellite networks with the ITU-BR.

**Article 14**
Spectrum Five shall present a bank guarantee for the costs as mentioned in Article 13 in the amount of € 50,000.

**Article 15**
The Radio Communications Agency and the Netherlands Antilles work on a cost-based approach. Involvement of the Radio Communications Agency will be calculated:
- per hour per person;
- additional costs (travelling expenses e.g.) will also be charged.

Reference is made to the *'Regeling Vergoedingen AT 2004'* (only available in Dutch). A summary of expenses made and hours spent for Spectrum Five will be made up every three months by the Radio Communications Agency and will be presented to Spectrum Five for payment[2]. Spectrum Five will pay such invoices within two weeks after receipt of the invoice.

### Article 16

The ITU sends invoices for the 'Cost Recovery for Satellite Network Filings' to the Radio Communications Agency for payment. The Radio Communications Agency will transfer the amount due to the ITU. The costs for ITU Cost Recovery will be included in the quarterly summary of expenses to Spectrum Five.

### §5. Issues related to space activities

### Article 17

Spectrum Five shall conduct all space activities in a proper manner and in accordance with best practice in the space industry and in compliance with the laws of the Netherlands and the Netherlands Antilles and any other applicable law, including the obligations of the Kingdom of the Netherlands under international law, and in particular Spectrum Five shall not:
a. so conduct its operations as to create any risk of contaminations of outer space or adverse changes in the environment of the earth or jeopardise public health or the safety of persons or property in any part of the world;
b. interfere with the activities of others in the peaceful exploration and use of outer space;
c. prejudice in any way the national security of the Netherlands or the Netherlands Antilles.

### Article 18

Spectrum Five shall indemnify the Kingdom of the Netherlands against any claims according to international law brought against the Kingdom of the Netherlands in respect of damage or loss arising out of activities carried on by Spectrum Five except for those damages arising from the negligence or misconduct of the Kingdom of the Netherlands itself.

---

[2] The 'Regeling Vergoedingen AT 2004' will presumably be subject to some extensive changes in the coming year. Probably a lump-sum payment covering general costs in combination with additional charges for specific working hours and travelling expenses will be the new basis of the cost calculation to satellite operators. The Netherlands Authority will keep Spectrum Five informed of the progress in possible changes in the cost calculation.

6

### Article 19

Spectrum Five shall insure and continue to insure itself against all liabilities that may arise in respect of damage or loss suffered by third parties, in the Netherlands, the Netherlands Antilles or elsewhere, as a result of activities carried on by Spectrum Five. This obligation shall be satisfied by a policy of insurance under which Spectrum Five is the named insured and the Netherlands Authority and the Netherlands Antilles will be named as additional insureds. Notwithstanding the foregoing, the Parties hereby understand and agree that the insurance described herein is for the contracting, construction, launch and operations of the satellite and therefore shall not be obtained until the commencement of such activities. The Netherlands Authority will receive a transcript of the annual or interim policy, including the terms and conditions of coverage, and a copy of the payment of the premium no less than 30 days prior to the date of entry of that policy.

### Article 20

Spectrum Five shall immediately notify the Netherlands Authority of any event or other occurrence that is likely to give rise to a claim under any of the policies of insurance effected by Spectrum Five.

### Article 21

Parties agree that any of the space activities of Spectrum Five, including the launching, bringing into orbit and operating in orbit of the satellite, can be subject to licensing according to future national space legislation. The required licenses will not unreasonably be withheld. Prior to adoption of the Space Law, the Netherlands Authority shall provide any authorizations required for the space object itself, in so far that the Netherlands Authority has the competence to do so. Otherwise, it is understood that no other authorizations, licenses or permits of the Netherlands Authority are required.

### §6. Benefits to the Netherlands Antilles

### Article 22

Spectrum Five shall extend Netherlands Antilles TV and Radio signals throughout the island chain via satellite (specifically by focussing a satellite 'spot' beam).

### Article 23

Spectrum Five shall provide one channel of TV capacity to the Netherlands Antilles which will have full access to the U.S.A. satellite TV market. This channel could be used at the Netherlands Antilles' discretion to promote tourism, trade, banking, and other investment opportunities to the most lucrative viewing audience in the world.

7

**Article 24**
Spectrum Five shall locate, build and operate Spectrum Five's satellite Telemetry, Tracking and Control (TT&C) centre in the Netherlands Antilles.

**Article 25**
Spectrum Five shall locate, build and operate a satellite feeder link in the Netherlands Antilles to 'feed' distance learning and TV programming to the satellite.

**Article 26**
Spectrum Five shall improve educational opportunities through satellite delivered distance learning to schools throughout the islands. The Spectrum Five satellite will transmit educational lectures to the Netherlands Antilles most remote schools. Additionally, lectures would be available at home so long as an individual has a dish and a receiver. It is understood that Spectrum Five will provide the facilities for said transmissions, but actual content will be provided by the Netherlands Antilles.

**Article 27**
Spectrum Five shall sponsor an annual local college scholarship for a student undertaking an engineering and science program in space communications.

**Article 28**
Spectrum Five shall support Bureau Telecommunication and Post of the Netherlands Antilles to improve and update its knowledge of satellite communications.

**Article 29**
Resources covered by these benefits will be placed at the disposal of the Netherlands Antilles during the full lifetime of the satellite this filing applies to. Licences may be needed to bring these benefits in operation; these licences based on the Telecommunications Act 1996 shall be granted by the Minister of Traffic and Transport of the Netherlands Antilles to Spectrum Five. Additionally, the Netherlands Antilles will provide, under current or future regulation, all other authorizations, licenses and permits necessary to build the TT&C centre and to provide services in the Netherlands Antilles.

**§7. Landing rights**

**Article 30**
Spectrum Five shall apply for U.S. landing rights on its own account. In case of unfair treatment by the U.S.A. FCC of Spectrum Five in comparison to other applicants the Netherlands Authority will send a supportive letter. Landing rights must be obtained before 1 January 2010.

8

### §8. Transfer of rights

#### Article 31

Spectrum Five shall not without the prior written consent of the Netherlands Authority transfer to third parties, either in whole or in part, any rights and obligations as concluded in this Agreement. Spectrum Five at all time shall remain ultimately responsible for all transferred rights.

#### Article 32

Spectrum Five shall not without the prior written consent of the Netherlands Authority subcontract or otherwise transfer the operational control of any of the space object(s), including the TT&C centre, or authorise, cause or permit performance of the space activities by another entity. Not withstanding the preceding sentence, the Parties hereby agree that Spectrum Five LLC will subcontract space activities concerning the building and the launching. Spectrum Five at all time shall remain ultimately responsible for all subcontracted and leased activities.

### §9. Continuation of the filing procedure

#### Article 33

Spectrum Five shall send a progress report to the Radio Communications Agency every three months. Such report will contain information on the developments of the Spectrum Five satellite network as well on the funding and the design of the satellite. Besides it will contain information in an authorized way on the anticipated schedule of the construction of the satellite, construction of the launcher, the anticipated launch window and the insurance scheme under which the satellite will be launched and operated. The report will be handled strictly confidential between the signing Parties.

### §10. Termination and applicable law

#### Article 34

1. The State of the Netherlands is entitled to terminate the Agreement immediately upon notice under general principles of law and, unless the Agreement is illegally or unreasonably terminated by the State of the Netherlands, without any right of financial compensation on behalf of Spectrum Five, if:

a. it becomes apparent that while entering into this Agreement (i) Spectrum Five has provided the State of the Netherlands with incorrect information (ii) has withheld certain information or (iii) has given a misrepresentation of facts, and the State of the Netherlands, in case it would have been aware of the correct information and facts, would not have entered into this Agreement or on different conditions;

9

b. Spectrum Five LLC makes a filing for bankruptcy protection under Chapter 7 of the
United States Bankruptcy Code or Spectrum Five BV makes a filing for bankruptcy
*(faillissementsaanvraag)*;

c. the filing with the ITU fails to succeed;

d. Spectrum Five fails to obtain U.S. landing rights before 1 January 2010;

e. Spectrum Five acts in violation with the provision of article 19;

f. Spectrum Five acts in violation with the provisions of article 31;

g. Spectrum Five has breached one or more of the other obligations of this Agreement;

h. Spectrum Five in any other way cannot fulfil its obligations under this Agreement.
In case of any of the circumstances described in subparagraphs (c), (g) and (h), the State
of the Netherlands shall not take such action until Spectrum Five has been notified and
has been offered a ninety day period to remedy the situation;

2. If the Agreement is terminated according sub1, the Netherlands Authority may
suppress or otherwise deal with the ITU filing(s) of the network of Spectrum Five,
without any right of financial compensation on behalf of Spectrum Five, unless the
Agreement is illegally or unreasonably terminated by the State of the Netherlands.

### Article 35
The State of the Netherlands will never be liable for any damages apart from direct
damages. Any liability of the State of the Netherlands for indirect damages, immaterial
damages or any kind of punitive damages are hereby excluded.

### Article 36
This Agreement shall exclusively be governed by Dutch law.

### Article 37
Any dispute of whatever nature or scope shall be submitted only to the competent court in
the The Hague District.

Stated and signed:

1.     **The State of the Netherlands**

Location: The Hague, the Netherlands
Date: 22 October 2004
Deputy Director-General
Directorate-General for Telecommunication and Post
Dr. G.A.A.M. Broesterhuizen

Location: Groningen, the Netherlands
Date:
Managing Director Chief Inspector
Radio Communications Agency
Ms. M.G. Schreur

2.     **The Government of the Netherlands Antilles**

Location: Willemstad, the Netherlands Antilles
Date: 5 Nov. 2005
Director of the Bureau Telecommunication and Post
Ing. J.D. de Canha

3.     **Spectrum Five LLC**

Location: The Hague, the Netherlands
Date: 22 October 2004
David Wilson
President

11

4.      **Spectrum Five BV i.o.**

P Daniel Wilson

Location: The Hague, the Netherlands
Date: 22 October 2004
David Wilson
President

12

## CERTIFICATE OF SERVICE

I, Michael H. Strub, Jr., do hereby certify that I have, on this 5th day of September, 2023, caused a copy of the foregoing "September 5, 2023 Letter to the FCC" to be sent via electronic mail to:

R. David Wilson
Spectrum Five LLC
2445 California Street NW
Washington, D.C.  20008
rdw@spectrumfive.com

Jennifer D. Hindin
Henry Gola
Sara M. Baxenberg
Garriott Boyd
Wiley Rein LLP
1776 K Street NW
Washington, D.C. 20006
JHindin@wiley.law
HGola@wiley.law
SBaxenberg@wiley.law
BGarriott@wiley.law
*Counsel for IntelSat*

Samuel L. Feder
Jenner & Block
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001-4412
SFeder@jenner.com
*Counsel for Spectrum Five, LLC*

Francisco R. Montero
Seth Williams
Fletcher Heald & Hildreth, PLC
1300 North 17th St., 11th Fl.
Arlington, VA 22209
montero@fhhlaw.com
williams@fhhlaw.com
*Counsel for Spectrum Five, LLC*

Michelle Bryan
Susan H. Crandall
Cynthia J. Grady
Intelsat US LLC
7900 Tysons One Place
McLean, VA 22102
michelle.bryan@intelsat.com
susan.crandall@intelsat.com
cynthia.grady@intelsat.com
*General Counsel*

Michael H. Strub, Jr.

# EXHIBIT 3



Michael H. Strub Jr.
Direct Dial: (949) 383-2770
MStrub@GGTrialLaw.com

September 6, 2023

**VIA E-MAIL: jonathan.kanter@usdoj.gov; robert.nicholson@usdoj.gov;**
**matthew.mandelberg@usdoj.gov; michele.ellison@fcc.gov; jacob.lewis@fcc.gov;**
**adam.sorensen@fcc.gov**

Jonathan S. Kanter                      P. Michele Ellison
Robert B. Nicholson                     Jacob M. Lewis
Matthew C. Mandelberg                   Adam L. Sorensen
U.S. Department of Justice              Federal Communications Commission
Antitrust Division                      45 L Street NE
950 Pennsylvania Ave. NW                Washington, DC  20554
Washington, DC  20530

Re:    **Petition for Review; United States Court of Appeals for the District of**
       **Columbia Circuit, Case No. 23-1163**

Dear Counsel:

        We represent Petitioner BIU, LLC in connection with the Petition for Review, United
States Court of Appeals for the District of Columbia Circuit, Case No. 23-1163 (the "Petition for
Review").

        As of June 23, 2023, when BIU filed the Petition for Review, BIU had not received a
response to its June 9, 2023 letter to Loyaan A. Egal, Chief of the Commission's Enforcement
Bureau, asking that the Commission reinstate the Petition for Enforcement of Operational Limits
and for Expedited Proceedings to Revoke Satellite Licenses (the "Petition").  As BIU explained
in the Petition for Review, R. David Wilson had no authority to direct Jenner & Block, LLP to
withdraw the Petition, and he did so without BIU's knowledge or consent.  BIU did not know
whether Mr. Egal would respond to BIU's letter, and because the 30-day deadline to file an
application for full Commission review of the dismissal order had passed, BIU was concerned
that it *had* exhausted its administrative remedies.

        As you point out in your Motion to Dismiss and to Defer Filing of the Record ("Motion
to Dismiss"), on August 11, 2023, the Enforcement Bureau sent a letter of inquiry to Spectrum
Five, LLC and its counsel asking them to respond to the allegations in BIU's June 9 letter.
Motion to Dismiss ¶ 4 & Ex. A.  Mr. Wilson responded to the Enforcement Bureau's letter on
August 25, 2023, and BIU replied to Mr. Wilson's letter on September 5, 2023.  *See* Exs. A & B.
Therefore, it appears that the Enforcement Bureau will issue a decision whether to reinstate the

**Greenberg Gross LLP**

Jonathan S. Kanter
Robert B. Nicholson
Matthew C. Mandelberg
P. Michele Ellison
Jacob M. Lewis
Adam L. Sorensen
September 6, 2023
Page 2

Petition.  If it does not, BIU then can appeal that decision to the full Commission within the period established by 47 C.F.R. § 1.115(d).

Please confirm that you share BIU's interpretation of the current proceedings at the Enforcement Bureau and that BIU continues to have an avenue to pursue its administrative remedies to which it claims it is entitled.  Upon receiving that confirmation, we will dismiss the Petition for Review.

Very truly yours,

Michael H. Strub Jr.

Attachments
MHS:CW

# EXHIBIT A



August 25, 2023

BY ECFS

Loyaan A. Egal
Chief, Enforcement Bureau
Federal Communications Commission
45 L St., NE
Washington, D.C. 20554

      Re:    *Spectrum Five, LLC – Petition for Enforcement of Operational Limits and for*
               *Expedited Proceedings To Revoke Satellite Licenses*, IB Docket No. 20-399

Dear Mr. Egal,

      Thank you for your August 11, 2023 letter,[1] which offers me an opportunity to respond to the allegations of BIU LLC ("BIU") regarding the actions of Spectrum Five LLC ("Spectrum Five").[2] BIU alleges that the Commission's April 24, 2023, *Order*[3] dismissing Spectrum Five's November 6, 2020, Enforcement Petition[4] was "procured by fraud."[5] BIU further alleges that it is Spectrum Five's "exclusive attorney-in-fact with sole authority to authorize the dismissal of the Petition" and that I was "not authorized to withdraw it."[6] These allegations are false, and the Commission should dismiss the BIU Letter.

---

[1] Letter from Loyaan A. Egal, Chief, Enforcement Bureau, to Samuel L. Feder, Jenner & Block LLP, IB Docket No. 20-399 (Aug. 11, 2023).

[2] Letter from Michael H. Strub, Jr., Counsel for BIU, LLC, to Loyaan A. Egal, Chief, Enforcement Bureau, FCC, IB Docket No. 20-399 (June 9, 2023) ("BIU Letter").

[3] *Spectrum Five LLC Petition for Enforcement of Operational Limits and for Expedited Proceedings to Revoke Satellite Licenses*, IB Docket No. 20-399, Order, DA 23-345 (EB 2023) ("*Order*").

[4] Petition of Spectrum Five for Enforcement of Operational Limits and for Expedited Proceedings to Revoke Satellite Licenses, IB Docket No. 20-399 (filed Nov. 6, 2020) ("Enforcement Petition").

[5] BIU Letter at 1.

[6] *Id.*

To start, I formed Spectrum Five. I worked with the Dutch Authority for Digital Infrastructure (RDI) to secure its spectrum rights at the International Telecommunications Union. I have always been and remain its chief executive. I oversee its business operations, its satellite operations, its financial operations, and its commercial contracts. And I also oversee its legal representation.

Most relevant here, I directed the filing of the Enforcement Petition on November 20, 2020. In this docket alone, I oversaw 16 separate filings on December 14, 2020, December 18, 2020, December 21, 2020, December 22, 2020, January 7, 2021, February 2, 2021, February 4, 2021, February 5, 2021, February 26, 2021, March 18, 2021, June 7, 2021, December 15, 2022, January 19, 2023, and finally April 12, 2023, when I directed Mr. Feder to withdraw the petition. Each time I procured counsel to represent Spectrum Five, and each time I was authorized to do so as Spectrum Five's chief executive with operational control.

These basic facts appear undisputed. In a supplemental letter, BIU makes clear that "BIU did not suggest, nor intend[s] to suggest, that BIU has assumed operational control of Spectrum Five."[7] And BIU reiterated the point in its Petition for Review filed with the court of appeals: "BIU did not assume operational control of Spectrum Five."[8] Nor did BIU notify the Commission that it had assumed control of Spectrum Five or its legal representation at any point while the proceeding was still pending.

Nor could BIU assert control of Spectrum Five. As the attached letter from the Dutch Authority for Digital Infrastructure (RDI) makes clear, Spectrum Five B.V. (Spectrum Five's Dutch affiliate) is organized under the laws of the Netherlands and has an agreement with the Dutch Authority to hold the spectrum rights that form the basis for the Enforcement Petition.[9] It affirms that Spectrum Five is and remains "represented by Mr. David Wilson."[10] And similar to U.S. law requiring FCC approval for transactions, the letter makes clear that "prior written consent of The Netherlands Authority" is required to "transfer to third parties, either in whole or in part, any rights and obligations" under the agreement.[11]

BIU has not received a transfer of any rights or obligations from the Dutch Authority. BIU has not requested a such a transfer. BIU has not represented Spectrum Five before the Dutch Authority. BIU has, in fact, no relationship with the Dutch Authority. As a consequence, it has no right to assert control over Spectrum Five, no right to claim it represents Spectrum Five, no right to hire or fire attorneys on behalf of Spectrum Five, and no right to represent the spectrum rights of The Netherlands in front the United States government or the Federal

---

[7] Letter from Michael H. Strub Jr., Counsel for BIU, to Loyaan A. Egal, Chief, Enforcement Bureau, IB Docket No. 20-399 (June 13, 2023) ("BIU Supplemental Letter").

[8] *BIU LLC v. FCC*, No. 23-1163, Petition for Review (D.C. Cir. filed June 23, 2023).

[9] Letter from Mr. F. Hofsommer, Head of Transport and Aerospace (writing on behalf of the Minister for Economic Affairs and Climate Policy), Dutch Authority Digital Infrastructure at 1 (Aug. 15, 2023) (attached).

[10] *Id.*

[11] *Id.* at 2.

Communications Commission. Throughout this entire proceeding, the only person authorized to make these decisions was me—including the decision to withdraw the Enforcement Petition. At no point did Spectrum Five cede authority over key business decisions to BIU or any other party. The provisions on which BIU relies relate to performance of ministerial functions on Spectrum Five's behalf, such as signing tax filings if required.[12] But, to my recollection, BIU has not had occasion to perform even such ministerial functions.

But whatever BIU's authority, it asked the Commission to reinstate the Enforcement Petition too late. Petitions for reconsideration of the April 24, 2023, *Order* were due May 24, 2023,[13] and applications for review of that order were due May 24, 2023.[14] Accordingly, the Commission need not decide BIU's strained interpretation of control. BIU's request is untimely, and the FCC can dismiss it as such.[15]

Finally, I feel compelled to personally respond to BIU's scurrilous allegation that I "was compensated by a party-in-interest in the proceeding" to withdraw the Enforcement Petition.[16] Such an unfounded accusation, offered without a shred of evidence—BIU admits it "do[es] not know" the facts"[17]—has no place before this Commission and does not merit a response. Nonetheless, I stipulate under penalty of perjury that I received no such compensation and directed Mr. Feder to withdraw the petition because I believed it was in the best interest of Spectrum Five.

Sincerely,

R. David Wilson
Chairman & CEO
Spectrum Five
2445 California St. NW
Washington, DC 20008

---

[12] Although BIU asserts that the loan was in default on August 1, 2021, Spectrum Five disputes that fact and believes that BIU had breached its agreements with Spectrum Five before that point—but the Commission need not address that issue. That's because even if BIU were correct, neither the Security Agreement nor the Pledge Agreement confers exclusive powers or sole authority to BIU to make decisions on Spectrum Five's behalf. *See* BIU Letter Att. F § 3.4; *id.* Att. H § 6.

[13] 47 C.F.R. § 1.106(f).

[14] 47 C.F.R. § 1.115(d).

[15] The Commission could also dismiss the letter as procedurally improper for failing to conform to the requirements of the Commission's rules. *See* 47 C.F.R. §§ 1.49, 1.51, 1.52, 1.106, 1.115. BIU's inability to conform with these basic requirements is not surprising given BIU believes there are eight FCC Commissioners. BIU Letter at n.2.

[16] BIU Letter at 1-2.

[17] *Id.*

Attachment



**Dutch Authority for Digital Infrastructure**
*Ministry of Economic Affairs and Climate Policy*

> Return address P.O. Box 450 9700 AL  Groningen, The Netherlands

Spectrum Five B.V.
Locatellikade 1
1076AZ Amsterdam
The Netherlands

Emmasingel 1
PO box 450
9700 AL  Groningen
The Netherlands
T +31 (0)88 0416000
www.rdi.nl
info@rdi.nl

**Contact**
T +31 (0)88 0416000

**Our reference**
RDI-EZK/8465029

**Your reference**
-

**Enclosures**
-

email: rhashem@mololamken.com
rdw@spectrumfive.com

Date      15 August 2023
Subject   Supporting letter

To whom it may concern,

The Netherlands administration, in this matter represented by the Dutch Authority for Digital Infrastructure (RDI), confirms that Spectrum Five B.V. (SF) which is represented by Mr. David Wilson, is a company under the laws of the Netherlands with whom the RDI has a formal agreement with. SF is registered at the Netherlands Chamber of Commerce under reference ID 75785471. We further recognize that SF is a company that is registered in the Netherlands and is a Netherlands based satellite operator. The activities of SF are subject to European and National law.

Under the Netherlands regulations, only a notifying administration can submit a filing in the ITU frequency filing process. Therefore, based on an agreement between SF and RDI, SF can request the RDI to submit ITU network filings. Whenever those filings are considered as favourable filings by the ITU, the agreement gives SF the exclusive right to use the filings. The RDI remains the rightsholder of those filings and is to act as an intermediary between involved organizations, administrations and SF, as far as it concerns technical frequency aspects.

These filings are subject to completion of the relevant coordination and notification under the applicable ITU Radio Regulations, and subject to compliance with relevant Netherlands regulations and legislation in this regard.

As stated in Article 31 of the agreement between SF and RDI, SF shall not without prior written consent of the Netherlands Authority transfer to third parties, either in whole or in part, any rights and obligations as concluded in this Agreement. SF at all times shall remain ultimately responsible for all transferred rights.

Yours sincerely,
on behalf of
The Minister for Economic Affairs and Climate Policy,

Mr. F. Hofsommer
*Head of Transport and Aerospace*
Dutch Authority Digital Infrastructure

# EXHIBIT B



Michael H. Strub Jr.
Direct Dial: (949) 383-2770
MStrub@GGTrialLaw.com

September 5, 2023

**VIA ECFS**

Loyaan A. Egal
Chief, Enforcement Bureau
Federal Communications Commission
45 L Street, N.E.
Washiington, D.C.  20554

> Re:    **April 24, 2023 Order Dismissing Petition for Enforcement of Operational Limits and for Expedited Proceedings to Revoke Satellite Licenses, IB Docket 20-399**

Dear Mr. Egal:

We write on behalf of BIU, LLC ("BIU") to respond to R. David Wilson's August 25, 2023 letter,[1] which he submitted in response to your August 11, 2023 letter directed to his counsel, Samuel L. Feder at Jenner & Block LLP.

Other than making the conclusional statement that he disputes the fact that Spectrum Five is in default on the BIU Loan,[2] Wilson Letter at 3 n.12, Mr. Wilson does not respond to the central points in BIU's Letter.  BIU has been funding these proceedings for almost three years; Spectrum Five has failed to repay BIU; and, as a consequence, Spectrum Five irrevocably designated, made, constituted, and appointed BIU as Spectrum Five's true and lawful attorney-in-fact pursuant to Section 3.4 of the Security Agreement[3] and Section 6 of the Pledge Agreement.[4]

Mr. Wilson approved the power-of-attorney language and acknowledged that it did not constitute a change of control under the Agreement.  He offers no explanation as to what rights

---

[1] Letter from R. David Wilson to Loyaan A. Egal, Chief, Enforcement Bureau, Federal Communications Commission, IB Docket No. 20-399 (Aug. 25, 2023) (the "Wilson Letter").

[2] Capitalized terms not defined herein are defined in the June 9, 2023 letter from Michael H. Strub, Jr. to Loyaan A. Egal, Chief, Enforcement Bureau, Federal Communications Commission, IB Docket No. 20-399 (the "BIU Letter").

[3] BIU Letter Att. F.

[4] BIU Letter Att. H.

**Greenberg Gross LLP**

Loyaan A. Egal
September 5, 2023
Page 2

BIU's power-of-attorney conveys; if it does not convey the right to protect BIU's investment, it is useless.  "It is a fundamental principle of contract interpretation that a contract should be interpreted so as to give meaning to each of its provisions."  *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.*, 205 F.R.D. 1, 11 (D.D.C. 2000).

Mr. Wilson relies exclusively on an August 15, 2023 letter from Mr. F. Ofsommer on behalf of the Netherlands Authority,[5] which he says confirms his authority to instruct Mr. Feder to withdraw the Petition.  Mr. Ofsommer, however, does not say this, nor does it say this in the agreement between the Netherlands and Spectrum Five that he references.

Attached to this letter as Exhibit 1 is the 2007 "Agreement between the State of the Netherlands, the Government of the Netherlands Antilles, Spectrum Five LLC and Spectrum Five BV i.o." (the "License Agreement").  The copy of the agreement that BIU received is largely illegible, so we have attached as Exhibit 2 the prior 2004 Agreement, which is substantively identical.  Article 31, which Mr. Ofsommer references, is part of Section 7, which governs "Landing Rights."  It provides that:

> Spectrum Five shall not without the prior written consent of the Netherlands Authority transfer to third parties, either in whole or in part, any rights and obligations as concluded in this Agreement. Spectrum Five at all time [sic] shall remain ultimately responsible for all transferred rights.

The Agreement gives Spectrum Five an exclusive license to use the 95° W.L. slot to ***operate*** a satellite.  It does not say that Spectrum Five has the exclusive right to control the administrative or litigation process by which it protects those rights.  This is confirmed by Article 32, which is in the same section of the Agreement, and states that:

> Spectrum Five shall not without the prior written consent of the Netherlands Authority subcontract or otherwise ***transfer the operational control of any of the space object(s)***, including the TT&C centre, or authorise, cause or permit performance of the space activities by another entity.  Not withstanding the preceding sentence, the Parties hereby agree that Spectrum Five LLC will subcontract space activities concerning the building and the launching.  Spectrum Five at all time [sic] shall remain ultimately responsible for all subcontracted and leased activities.

---

[5] Letter from Mr. F. Hofsommer, Head of Transport and Aerospace (writing on behalf of the Minister for Economic Affairs and Climate Policy), Dutch Authority Digital Infrastructure, Wilson Letter, Att.

**Greenberg Gross LLP**

Loyaan A. Egal
September 5, 2023
Page 3

Emphasis added.

Article 30 provides that Spectrum Five "shall apply for U.S. landing rights on its own account" and that the Netherlands Authority will support those efforts. That is the only portion of the Agreement that relates in any way to proceedings before the FCC.

Given that Mr. Ofsommer's letter was sent after the Enforcement Bureau asked Mr. Feder to respond to the BIU Letter, he certainly could have said clearly that Mr. Wilson had the exclusive ability to withdraw the Petition or that the Netherlands Authority supported his decision to do this. He did not.

The rights at issue are BIU's only collateral for economic interests worth hundreds of millions of dollars. Mr. Wilson's equity economic interest in Spectrum Five is subsidiary to the holders of debt in BIU. Mr. Wilson states that he was not compensated for instructing Mr. Feder to withdraw the Petition, but there was a reason that he did so, and it is reasonable to assume that it was financially beneficial for him to do this.

The facts that led to the withdrawal of the Petition further belie Mr. Wilson's assertion that he gave this instruction solely because he "believed it was in the best interest of Spectrum Five." Wilson Letter at 3. The Petition was originally filed by MoloLamken LLP, who was well aware of BIU's power-of-attorney. Mr. Wilson, however, instructed Mr. Feder to withdraw it and never informed him about the power-of-attorney. If Mr. Wilson's instruction to withdraw the Petition was above board, Mr. Feder presumably would have responded himself to the allegations in the BIU Letter that the Petition was procured by fraud and also would have explained why the decision was made. Apparently, Mr. Wilson not only defrauded the Commission, he misled his attorneys as well.

Most telling of all is that Mr. Wilson offers the Commission no explanation as to why he instructed Mr. Feder to withdraw the Petition or why he did so surreptitiously. BIU has sought, unsuccessfully, to get Mr. Wilson to explain his action, and he has never done so.

BIU seeks the most reasonable and efficient opportunity to understand the reason for Mr. Wilson's actions and whether others were complicit to permit it to defend its rights. The Commission should have a common interest. Without such a reasonable explanation through a continuation of proceedings before the FCC, BIU will have no choice but to pursue other, more complicated, less attractive litigation.

As BIU said in its June 9 letter, at issue is the integrity of the proceedings before the Enforcement Bureau. The Enforcement Bureau should not allow Mr. Wilson to unilaterally withdraw the Petition under these fraudulent circumstances. It should set aside the Order, reinstate the Petition, and reopen the docket.

**Greenberg Gross LLP**

Loyaan A. Egal
September 5, 2023
Page 4

Respectfully submitted,

Michael H. Strub, Jr.

Attachments
cc:    See attached service list

    Jonathan S. Kanter (jonathan.kanter@usdoj.gov)
    Robert B. Nicholson (robert.nicholson@usdoj.gov)
    Matthew C. Mandelberg (matthew.mandelberg@usdoj.gov)
    P. Michele Ellison (michele.ellison@fcc.gov)
    Jacob M. Lewis (jacob.lewis@fcc.gov)
    Adam L. Sorenson (adam.sorensen@fcc.gov)

# EXHIBIT 1

**Agreement between the State of the Netherlands, the Government of the Netherlands Antilles, Spectrum Five LLC and Spectrum Five BV**

**Parties**

1.   The State of the Netherlands, which has its seat in The Hague, represented on behalf of the Minister of Economic Affairs by:

a. Dr. P.A. Boot, Deputy Director-General of the Directorate-General for Energy and Telecommunications, hereinafter also referred to as 'the Netherlands Authority', and by

b. Ms. M.G. Schreur, Managing Director Chief Inspector of the Radio Communications Agency, hereinafter also referred to as 'the Radio Communications Agency';

2.   The Government of the Netherlands Antilles, which has its seat in Willemstad Curacao, represented by Ing. D. de Cunha, Director of Bureau Telecommunication and Post, hereinafter referred to as the Netherlands Antilles'

3.   Spectrum Five LLC, which is registered as a Delaware limited company with its business office located in Washington D.C. represented by David Wilson, President.

     Spectrum Five BV, a Netherlands Corporation with its business located in the Netherlands, represented by David Wilson, president. Spectrum Five LLC and Spectrum Five BV may throughout this Agreement separately and collectively be referred to as "Spectrum Five"

**Additional Orbital Positions**

Additional Filings shall mean

Filings with the ITU in respect of the following orbital positions

Modification of the BSS Plan for Region 2 (Appendix 30 and 30A)

SP BSS5 114.5° W 12.17 GHz

Allocation to Region 2 for the BSS 14.5 degree sp (ring)



```
BSSNET  96.5°W        17/25 GHz
BSSNET  101°W         17/25 GHz
BSSNET  105.5°W       17/25 GHz
BSSNET  110°W         17/25 GHz
BSSNET  114.5°W       17/25 GHz
BSSNET  119°W         17/25 GHz
```

Allocation in Region 2 for the BSS (4 degree spacing)

```
BSSNET2-95°W          17/25 GHz
BSSNET2-99°W          17/25 GHz
BSSNET2-103°W         17/25 GHz
BSSNET2-107°W         17/25 GHz
BSSNET2-111°W         17/25 GHz
BSSNET2-115°W         17/25 GHz
BSSNET2-119°W         17/25 GHz
```

Considering

... Parties signed an agreement in The List meeting "2" October 2014 whereing agreed ... valid and in force in respect of orbital positions 14.5 We said that in order to further the ... Conditions of further coordination provisions the parties met and came into force in ... No intent in respect of the middle and other spans

... the planning the procedures ong Subregion Section (BSS) which might Appendix ... the for the Regulations in annex has been adequate indication of excess of ... Existing site reservations without modifications.

... digital transmission techniques may allow reduction of ... to greater utilization of satellite resource (resources)" and that certain jurisdictions ... the United States current configuration does not seem to be appropriate

... that does not have a license to operate and launch and locate dedicated orbital spectrum that are possesses covered by any of the Additional future Rights that may... the American spectrum agency and... sectionally and that is necessary... given with a specified distances on one of the two four degree positions would be precluded from... being presented in respect of the satellites and each of the Administrations...



(f) that these satellites shall target the USA broadcasting market, including the local-to-local television markets, DTH and HDS services;

g) that these satellites shall utilize state of the art spacecraft technology and if appropriate contain beam switching with a sufficient number of beams to satisfy the conditions required by the service provision under consideration (dispersal granted in different local regions in the USA;

f) that the wording in the section (f) has been substantially deleted;

g) that in order to assign the Additional Filings to spectrum five, a non-transfer coordination, a notation and filing of each of the Additional Filings with the EUSat is requested. For the avoidance of doubt, as it is technically impossible to simultaneously operate both sets of filings jointly one of the two filed degree plans will be requested and be made permanent in respect of the satellite under each of the Additional Filings (see section (e));

i) that Spectrum Five has requested the State of the Netherlands to file the Additional filings with the ITU for coordination reasons and for future extension of Spectrum Five's satellite network;

i) that according to the ITU Radio Regulations the State of the Netherlands is the administration responsible for discharging the ITU obligations in relation to the subject of this Agreement;

i) that the State the Netherlands for the purpose of this Agreement represents the Netherlands and the responsible organizations concerning general telecommunication matters and the Public Telecommunication concerning international telecommunication matters to the Ministry of Economic Affairs;

k) that the Government of the Netherlands Antilles for the purpose of this Agreement operates the Bureau Telecommunicatie and Post (BTP), as part of the Ministry of Traffic and Transport, for specific matters concerning the Netherlands Antilles;

i) that the State of the Netherlands on a voluntary basis is willing to support the coordination of the Additional filings to the ITU under the circumstance and conditions declared hereafter;

m) that the Additional Filings will be done by the Radio Communications Agency in an exclusive way for each of the specific conditions, specific frequencies and specific services in respect of the Additional filings for each of the Spectrum Five;



c) that the Ministry of Economic Affairs currently is studying the establishment of an amendment of the Netherlands Telecommunications Act with regard to the introduction of a licensing regime for the use of radio frequencies for space to earth communication, in addition to the existing licensing regime for the use of frequencies for communications from earth to space (hereafter the "Satellite Licensing Regime);

that under the Satellite Licensing Regime additional licences may be needed to under the provision covered in this Agreement and therefore Spectrum Five may be subjected to the Satellite Licensing Regime, the licences will be granted by the Ministry of Economic Affairs of the Netherlands to Spectrum Five according to the provisions of relevant legislation in force at soon as possible, providing there are no authority restrictions to issue these licences. The State of the Netherlands reserves the right to impose additional terms and conditions in the licence that will be issued under the Satellite Licensing Regime;

that signing this Agreement by all parties concerned implies that these parties agree on all following issues concerning this Agreement on the date on which it is signed

Stating.

§I. General

Article 1

Spectrum Five Ltd has incorporated in writing represented substantive reference made to its Spectrum Five BV shall be at least a party to a particular by the provisions of Netherlands an Netherlands Antilles arrangements activities as well as relevant operations with this Agreement

That said stating shall at least consist of the establishment of the Telemetry, Tracking and Control centre (TT&C), i.e. a station that monitors corrects processing of the keeps technical parameters and controls the proper or complete use own of a satellite network, in the Netherlands Antilles or at the other stations responding to the orbital position of satellites not fixed in the Radio Communications Agency;

Article 2

Spectrum Five is issued by the Law of the Netherlands and the Netherlands Antilles

RAW

### Article 3

Operation by Spectrum Five of geostationary orbital locations and assigned frequency bands shall comply with the ITU Radio Regulations and, where and to the extent applicable to private parties such as Spectrum Five, with other relevant international treaties to which the State of the Netherlands and the Government of the Netherlands Antilles are signatories.

### Article 4

Spectrum Five shall comply with the obligations resulting from the ITU Treaty and where and to the extent as applicable to private parties such as Spectrum Five with other relevant international treaties to which the State of the Netherlands and the Government of the Netherlands Antilles are signatories.

### Article 5

Spectrum Five shall in good faith pursue its best efforts to construct, launch and insure the satellite network under consideration(s) within a reasonable period of time.

## §2. Notifying Administration

### Article 6

The State of the Netherlands accepts the responsibility concerning the coordination, notification, examination and registration in ITU of the Spectrum Five networks in the ITU MIFR.

### Article 7

The Radio Regulations Agency will notify to the ITU Bureau its use of Spectrum Five for each of the geostationary locations and frequencies in the ITU MIFR in which The Spectrum Five shall act as the Notifying Administration for Spectrum Five for each of the orbital positions covered by the Additional Filings.

### Article 8

Upon successful completion of each of the Additional Filings with the ITU, the technical parameters, including with regard to the specific frequency restrictions or service use of the Additional Filings will be assigned to Spectrum Five. This usage relates to the

becomes ... the first operational satellite and the lifetime of any additional or replacement satellites placed in this location, launched within five years from the launch of the first operational satellite. Renewal of this period can be applied for and will not ... be withheld

### Article 9

The wording in this Article 9 has been intentionally deleted

### §3 Coordination meetings negotiations

### Article 10

The State of the Netherlands will be represented in coordination organizes ... its own Authorities by the Radio Communication Agency

### Article 11

The Radio Communications Agency is ... an intermediary between involved organisations and administrations and Spectrum ... as it concerns technical (technically) aspects

### Article 12

The Radio Communications Agency plans, coordinates in the ... when ... meetings and coordinates and ... when it concerns ... during the coordination, speech specifies ... take ... the national ... as agreed to ...

### §4 Costs incurred

### Article 13

1.    The Radio Communications Agency works on a monthly or approach. Involvement of the Radio Communications will be calculated

- by charging a yearly lump sum;
- for coordination activities, calculation will take place per hour or person, miscellaneous expenses will be charged separately;

2.    ... expenses made and hours spent for coordination actions, for ... quarter ... LLC will be drawn up every three (3) months by the Radio Communications Agency and will be presented to Spectrum Five LLC for ... payment. All invoices will be paid by spectrum Five LLC within four (4) week.

2 RW

after receipt of the invoice.

The lump sum and the charges (...), working hours relating to exceptional cases which are subject to a yearly review. The Radio Communications Agency will keep Spectrum Five LLC informed of changes in the cost calculation.

**Article 14**

The ITU sends invoices for the Cost Recovery in a Statement Network charge to the Radio Communications Agency for payment.

Before payment, the Radio Communications Agency will inform Spectrum Five LLC of the invoice. When both the Radio Communications Agency and Spectrum Five LLC agree with the invoice, the Radio Communications Agency will reimburse the amount due to the ITU. The costs for ITU Cost Recovery will be included in the quarterly statement of expenses of Spectrum Five LLC.

In case Spectrum Five LLC is not in agreement with the ITU invoice, the Radio Communications Agency does not agree to pay that part of the invoice and will inform them which part it does not agree with. In such cases it shall continue to proceed as required by Spectrum Five LLC.

The Radio Communications Agency bears no risks (...) the costs (...) made between Spectrum Five LLC and the ITU (...) for all actions towards the (...) system decisions of the ITU can be taken for paying the invoice (...) concerning the actions including the costs of the Radio Communications Agency not within the control of Spectrum Five LLC.

**Article 15**

Spectrum Five guarantees payment to the Radio Communications Agency of the further and Administrative all costs associated relating to the filing of the administrative filing.

Spectrum Five will have surety for the payment of the costs, estimated in section of not less than the amount of US $ 50,000, guaranteed by the Radio firm.

**Article 16**

Spectrum Five LLC stops payment of the costs, referred to in Article 14 and 15 and the deficit to obligations laid down in Articles 15 and 16. Before the filing procedure is stopped, the procedure will suspended. Before the filing procedure is stopped, the filing are

suppressed, the Radio Communications Agency shall give Spectrum Five LLC written notice of its failure to meet such obligations and offer Spectrum Five LLC a reasonable period of time, which will be no less than four (4) weeks from sending of such notice, to remedy such failure to the satisfaction of the Radio Communications Agency.

§5. Issues related to Space Activities

### Article 17

It is expressly acknowledged that the provisions of the Agreement concerning the filing and utilization of the orbital position conveyed to the Netherlands filings is not within the scope of the Netherlands Space Activities Act. Support for the operating condition of Spectrum Five or Satellites for and in all Space Activities to be defined in the Covenant and its Space Activities Act, ... and obtain most or in accordance with best practices in the industry and to comply to conduct in the launch of the Net orbit and/or the operations satellite and any other international law or during the oct near use of the licenses of the Netherlands and the requirements of the Netherlands and has an international law to ensure the orbital slot or intervals as are applicable to ensure particular permission for the filing in particular Spectrum Five obligation:

- a. to conduct its operations as to reduce the risk of contamination of outer space or adverse changes in the environment of the earth or to exercise public health or the safety or personal effects or any part or activity, including with those activities in the peaceful exploration and use of outer space;
- b. to adhere to the obligations of the Netherlands under the Outer Space Treaty.

### Article 18

Spectrum Five shall indemnify the State of the Netherlands and the Government of the Netherlands against any claims according to international law brought against the State of the Netherlands or the Government of the Netherlands Antilles in respect of damage or loss connected to Space Activities to be defined in the Netherlands Space Activities Act against that any Spectrum Five except for those damages arising from the negligence or misconduct of the State of the Netherlands or the Government of the Netherlands Antilles and their affiliates.

### Article 19

Spectrum Five shall indemnify and compensate and defend against all liability that may arise in respect of damages or loss suffered by third parties, in the civil liability law

Netherlands Antilles or elsewhere, as a result of Space Activities (as defined in the Netherlands Space Act) other Acts carried out by Spectrum Five. This obligation shall be satisfied by a policy of insurance under which Spectrum Five is the named insured and the State of the Netherlands and the Government of the Netherlands Antilles will be named as additional insured parties. Notwithstanding the foregoing, the Parties hereby understand and agree that the insurance described herein is for the Space Activities as defined in the Netherlands Space Activities Act) and therefore shall not be obtained until the commencement of such Space Activities (as defined in the Netherlands Space Activities Act). The State of the Netherlands and the Government of the Netherlands Antilles will receive a transcript of the annual or interim policy, including the terms and conditions of coverage, and a copy of the payment of the premium no less than 30 days prior to the date of entry of that policy.

### Article 20

Spectrum Five shall immediately notify the State of the Netherlands and the Government of the Netherlands Antilles of any event or other occurrence that is likely to give rise to a claim under any of the policies of insurance effected by Spectrum Five.

### Article 21

Parties agree that the Space Activities (as defined in the Netherlands Space Act) and Act of Spectrum Five can be subject to separate licensing requirements under the Netherlands Space Activities Act or other future applicable national space legislation. Any national licenses will not be unreasonably withheld from the operation of the Netherlands Space Activities Act or other future applicable national legislation. In the event should it provide any authorisation is required for the space object itself, in so far as the State of the Netherlands has not cooperated to do so and has done that are in violation of these licences.

### §6. Benefits to the Netherlands Antilles

### Article 22

Spectrum Five shall extend Netherlands Antilles TV and Radio signals throughout the island chain and elsewhere (specifically by focusing satellite spot beams).

### Article 23

Spectrum Five shall provide one channel of TV capacity to the Netherlands Antilles which will have full access to the U.S.A. satellite TV market. This channel could be used



to the Netherlands Antilles' discretion to promote tourism, trade, banking, and other recreational opportunities to the most lucrative viewing audience in the world.

## Article 24

Spectrum Five shall locate, build and operate Spectrum Five's Satellite Telemetry Tracking and Control (TT&C) centre in the Netherlands Antilles.

## Article 25

Spectrum Five shall locate, build and operate a satellite feeder link in the Netherlands Antilles to feed distance learning and TV programming to the satellite.

## Article 26

Spectrum Five shall support educational opportunities through satellite classes, distance learning at schools throughout the islands. The Spectrum Five satellite will transmit educational services to the Netherlands Antilles most remote places. Addressable lectures could be available at home so long as an individual has a dish and a receiver. It is understood that Spectrum Five will provide the facilities for said transmissions, but actual content will be provided by the Netherlands Antilles.

## Article 27

Spectrum Five shall sponsor an annual local college scholarship for a student undertaking Engineering, or Science major in space communications.

## Article 28

Spectrum Five shall support Bureau Telecommunication and Post of the Netherlands Antilles to improve and update its knowledge of satellite communications.

## Article 29

Resources covered by these benefits will be placed at the disposal of the Netherlands Antilles during the full lifetime of the satellite. This siting applies to. Licences class we needed to bring these benefits in operation. These licences based on the Telecommunications Act 1996 shall be granted by the Minister of Traffic and Transport of the Netherlands Antilles to Spectrum Five. Additionally the Netherlands Antilles will provide, under current or future regulation, all other authorisations, licenses and permits necessary to build the TT&C centre and to provide services in the Netherlands Antilles.

## §7. Landing rights



Article 30

Spectrum Five shall apply for filing rights on its own account. In case of unfavourable treatment by the the USA FCC or by any other body receiving applications for filing rights of investment in Five in comparison to other applicants, this in the judgement of the State of the Netherlands, it may send a letter of comport, and in the case of the USA FCC it will send a letter of support.

§8 Transfer of rights

Article 31

Spectrum Five shall not without the prior written consent of the State of the Netherlands transfer to third parties, either in whole or in part, any rights and obligations as contained in this Agreement. Spectrum Five at all time shall remain ultimately responsible for transferred rights.

Article 32

Spectrum Five shall not transfer the operational or natural of any of the space objects and filing per the ITAA can e from the Netherlands to allocations any other for other party in the future and shall authorise, license or permit performing use of the Space Activities or of other cargo. Notwithstanding the preceding sentence, the Parties hereby agree that Spectrum Five shall subcontra Space Activities as concerns the holding and the operating. Spectrum Five at all time shall remain ultimately responsible for subcontracted based services.

§9. Continuation of the filing procedure, progress report and information

Article 33

Spectrum Five shall issue a progress report to the Radio Communication Agency every four months, starting September 200_. Such report will contain up to date on the developments in the spectrum Five satellite network as well as the total scan of the design of the satellite. Besides it will contain information on advanced status of the anticipated schedule of the construction of the satellite, information of the launcher, the anticipated launch window and the insurance scheme under which the satellite will be launched and operates. The report will be handled strictly confidential between the signing Parties, in particular

Section 2 of this article

The Radio Communications Agency will handle such reports strictly confidentially, unless the Public Access Act or article 68.1 of the Constitution prescribes otherwise. Prior to the public disclosure of any part of the report, or of any information contained in the report, the Radio Communications Agency shall give Spectrum Five LLC written notice of its intention to make such public disclosure, and shall give Spectrum Five LLC at least [...] days from the date of such notice to present reasons why such disclosure is not required under the Public Access Act.

3.    In the interests of clarity, Spectrum Five shall bear the comments of such report in [...] particular as said essay essays.

## Article 33 A

The State of the Netherlands shall be informed by Spectrum Five LLC in case of any change in the ownership of Spectrum Five LLC [...] its Netherlands based subsidiary.

## §10. Termination and applicable law

## Article 34

1.    The State of the Netherlands is entitled to terminate the Agreement immediately [...] also in more [...] under general [...] mutual consent [...] any right [...] Transfer [...] register [...] becomes [...] Spectrum Five notifies the Agreement in [...] in case [...] the [...] communicated to the State of the Netherlands that [...]

       a.    Spectrum Five warrants that which was signed [...] the Agreement to sign [...] had it provided that the State [...] time [...] the [...] correct [...] and [...] Five would [...] certain information [...] by [...] in case a [...] and if the State of the Netherlands, in case it would have been aware of the correct [...] information and facts, would not have entered into the Agreement or [...] different conditions, or;

       b.    Spectrum Five LLC makes a filing for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code, or a filing for bankruptcy [...] emergency of Spectrum Five is made;

            Spectrum Five acts in violation of the provisions of article 32;

       d.    this is required for compliance with a binding decision of an institution of the [...] Union, or for compliance with [...] conventions and decisions of [...] institutions [...] which are binding on the Netherlands;

       e.    this is required in [...] of the reassignment [...] in the Netherlands.



- there is a justifiable fear that keeping this Agreement in effect would seriously jeopardise the security of the State or the Netherlands or the Netherlands public order;
- the grounds on which the Agreement was signed have ceased to exist;
- maintaining the Agreement would significantly restrict trade, import, or so the Government made in the Netherlands.

Notwithstanding the conditions set in Section 1 of this article, the State or the Netherlands is entitled to terminate this Agreement, with respect to a part of the satellite orbital location and frequency covered by the Additional Annex immediately upon notice under general principles of law without payment of State compensation on behalf of Spectrum have a claim due to an event illegally or unreasonably announced by the State of the Netherlands of the respect to that particular satellite orbital location and frequency.

a.    the failure of he relevant and individual positions of Article III    a  ...
b.    Spectrum has acts in violation with the provisions Section III;
.     Spectrum has acts in violation with the provisions of Article IV;
.     Spectrum have had breached one or more of the remaining terms of the Agreement;
e.    Spectrum has to any other to commit a fundamental breach of another Agreement.

In case of any of the circumstances described in subparagraphs a, b, c, d, and e of Section 2 above, the State of the Netherlands shall make a written notice to Spectrum, upon which the state of the Netherlands shall ... to within the notice.

Notwithstanding that, after only fourteen days, the State of this Agreement or part thereof upon full written notice, and require that, unless a change to it, this Agreement shall remain in full force and all respects all of it at such the state immediately upon the date so terminated.

If this Agreement is terminated immediate upon Section 2 of this article, and by ... according to respect 2 above, the Netherlands Authority may, upon written notice with the Additional Annex, terminate the right of spectrum upon such or which of spectrum function the Netherlands or Spectrum by breach of agreement in whole or in part as the case may be in the Netherlands.

Article 14.5



of one or more provisions laid down in this Agreement, cease to be mandatory, the parties will amend this Agreement in such a way that the Agreement no longer will contain no-binding provisions and the objectives of this Agreement will be attained.

## Article 35

The State of the Netherlands will never be liable for any damages apart from direct damages. Any liability of the State of the Netherlands for indirect damages, immaterial damages or any kind of punitive damages are hereby excluded.

## Article 36

This Agreement shall exclusively be governed by Dutch law.

## Article 37

Any dispute of whatever nature or scope shall be submitted only to the competent court in the The Hague District.

Stated and signed

I        The State of the Netherlands

Location: The Hague, the Netherlands
Date        26 July 2007
Deputy Director-General
Directorate-General for Energy and Telecommunications
Dr. F.A. Poot

Location: Groningen, the Netherlands
Date   26 June 2007
Managing Director Chief Inspector
Radio Communications Agency
Ms. M.G. Schreur

The Government of the Netherlands Antilles

Location: Willemstad, the Netherlands Antilles
Date   6 August 2007
Director
Bureau Telecommunication and Post
Ing. J.D. de Garita

RAW

Spectrum Five LLC

_R. David Wils_

Location Washington DC  USA
Date July 29 2002
President
R David W

Spectrum Five BV

_R. David Wils_

Location. Washington, D.C., USA
Date July 29, 2002
President
R. David Wilsen

# EXHIBIT 2

**Agreement between the State of the Netherlands, the Government of the Netherlands Antilles, Spectrum Five LLC and Spectrum Five BV i.o.**

**Parties**:

1. **The State of the Netherlands,** which has its seat in The Hague, represented on behalf of the Minister of Economic Affairs by:
   a. Dr. G.A.A.M. Broesterhuizen, Deputy Director-General of the Directorate-General for Telecommunications and Post, hereinafter referred to as 'the Netherlands Authority'; and by
   b. Ms. M.G. Schreur, Managing Director Chief Inspector of the Radio Communications Agency, hereinafter referred to as 'the Radio Communications Agency',
2. **The Government of the Netherlands Antilles,** which has its seat in Willemstad Curacao, represented by Ing. J.D. de Canha, Director of Bureau Telecommunication and Post, hereinafter referred to as 'the Netherlands Antilles',
3. **Spectrum Five LLC,** which is registered as a Delaware limited liability company with its business office located in Arlington, Virginia, USA, represented by David Wilson, president, and
4. **Spectrum Five BV i.o.,** a Netherlands Corporation with its business office located in the Netherlands, represented by David Wilson, president. Spectrum Five LLC and Spectrum Five BV i.o. may throughout this Agreement separately and collectively be referred to as "Spectrum Five".

**Considering**:

a) that the planning of the Broadcasting Satellite Service (BSS) according to Appendix 30 of the ITU Radio Regulations assumes Ku-band analogue transmission techniques locating satellites on positions with 9° spacing;

b) that digital transmission techniques may allow reduction of this spacing to 4.5° creating additional satellite positions ('tweeners');

c) that Spectrum Five is planning to construct, launch and locate a dedicated satellite for the orbital position 114.5° West;

d) that this satellite will target the US.A. 'local-to-local' television market;

e) that this satellite will utilize state of the art spot beam technology with a sufficient number of beams to satisfy the conditions required by the service provision under consideration d. and pointed at different local regions in the U.S.A.;

1

f) that the U.S.A. Local Television Loan Guarantee Program may contribute substantially to the financing necessary to construct, launch and insure this satellite;

g) that in order to assign the orbital position 114.5° W to Spectrum Five a notification, coordination, examination and registration (filing) of the orbital position 114.5° W with the ITU-BR is required;

h) that Spectrum Five requested the State of the Netherlands to file the orbital position 114.5° W with the ITU;

i) that according to the ITU Radio Regulations the State of the Netherlands as relevant administration is responsible for discharging the ITU obligations in relation to the subject of this Agreement;

j) that the State of the Netherlands for the purpose of this Agreement involves the Directorate Telecommunications and Post concerning general telecom affairs and the Radio Communications Agency concerning operational telecom affairs, both part of the Ministry of Economic Affairs;

k) that the Netherlands Antilles for the purpose of this Agreement involves the Bureau Telecommunication and Post (BTP), as part of the Ministry of Traffic and Transport, for specific matters concerning the Netherlands Antilles;

l) that the State of the Netherlands on a voluntary basis is willing to support the submission of such a filing to the ITU under the circumstances and conditions declared hereafter;

m) that this filing will be done by the Radio Communications Agency in an exclusive way for this specific location (114.5° West), specific frequency (Ku-band) and specific service (BSS Region 2) for the benefit of Spectrum Five;

n) that benefits, on behalf of the Netherlands Antilles, are connected to the filing ;

o) that licences may be needed to bring these benefits in operation[1]; these licences will be granted by the Minister of Traffic and Transport of the Netherlands Antilles to Spectrum Five under current or future regulation as soon as possible;

---

[1] For the use of frequencies for the purpose of a satellite earth station a license from the Minister of Traffic and Transport of the Netherlands Antilles is required. No licence is required for Receive-only terminals. Information is to be provided on an application form which can be obtained from BTP. The

2

p) that the Netherlands Authority is drafting a national space law regulating space activities;

q) that licences may be needed to launch and operate the satellite; these licences will be granted by the Minister of Economic Affairs of the Netherlands to Spectrum Five according to the relevant legislation in force as soon as possible;

r) that signing this Agreement by all parties concerned implies that these parties agree on all following issues commencing this Agreement on the date on which it is signed.

---

necessary licenses will be provided by the Minister of Traffic and Transport of the Netherlands Antilles (BTP) within the regulatory framework (inclusive timeframe).

**Stating:**

**§1. General**

**Article 1**
Spectrum Five LLC shall incorporate a Netherlands-based Subsidiary (named Spectrum Five BV) and the Subsidiary shall be responsible to Spectrum Five LLC for all Netherlands and Netherlands Antilles regulatory activities, as well as compliance with this Agreement.

**Article 2**
Spectrum Five is bound by the Law of the Netherlands and the Netherlands Antilles.

**Article 3**
Operation by Spectrum Five of geostationary orbital locations and assigned frequency bands shall comply with the ITU Radio Regulations.

**Article 4**
Spectrum Five shall comply with the obligations resulting from the ITU Treaty.

**Article 5**
Spectrum Five shall in good faith pursue to seek finance to construct, launch and insure the satellite as qualified under consideration e. within a reasonable period of time.

**§2. Notifying Administration**

**Article 6**
The State of the Netherlands accepts the responsibility concerning the procedure of notification, co-ordination, examination and registration (filing) of the Spectrum Five networks to the ITU-BR.

**Article 7**
The Radio Communications Agency will notify for the exclusive use of the geostationary location of 114.5° W in the BSS Region 2 Plan to the ITU-BR on behalf of Spectrum Five and act as the Notifying Administration for Spectrum Five.

**Article 8**
Parties agree that after completion of the filing with the ITU-BR, the geostationary location 114.5° W, with regard to the specific frequency(ies) and service(s), will be assigned exclusively to Spectrum Five. This exclusive use is related to the lifetime of the first operational satellite and the lifetime of any additional or replacement satellites

placed at this location, launched within five years from the launch of the first operational satellite. Renewal of this period can be applied for and will not unreasonably be withheld.

**Article 9**
After confirmation of receipt of the notification by ITU-BR, the Radio Communication Agency will request the Australian Authority to suppress the AUSSAT-5 filing, as already was agreed in previous discussions between the Authorities of the Netherlands and Australia.

**§3. Coordination meetings/negotiations**

**Article 10**
The State of the Netherlands will be represented in co-ordination negotiations with foreign Authorities by the Radio Communications Agency.

**Article 11**
The Radio Communications Agency is to act as an intermediary between involved organisations and administrations and Spectrum Five as far as it concerns technical frequency aspects.

**Article 12**
The Radio Communications Agency is to take part in frequency technical meetings and negotiations with other Government Agencies concerning frequency aspects. Spectrum Five will be invited to attend all such meetings.

**§4. Costs incurred**

**Article 13**
Spectrum Five guarantees payment to the Radio Communications Agency and the Netherlands Antilles of all costs involved in relation to the filing of Spectrum Five's satellite networks with the ITU-BR.

**Article 14**
Spectrum Five shall present a bank guarantee for the costs as mentioned in Article 13 in the amount of € 50,000.

**Article 15**
The Radio Communications Agency and the Netherlands Antilles work on a cost-based approach. Involvement of the Radio Communications Agency will be calculated:
- per hour per person;
- additional costs (travelling expenses e.g.) will also be charged.

Reference is made to the *'Regeling Vergoedingen AT 2004'* (only available in Dutch). A summary of expenses made and hours spent for Spectrum Five will be made up every three months by the Radio Communications Agency and will be presented to Spectrum Five for payment[2]. Spectrum Five will pay such invoices within two weeks after receipt of the invoice.

### Article 16
The ITU sends invoices for the 'Cost Recovery for Satellite Network Filings' to the Radio Communications Agency for payment. The Radio Communications Agency will transfer the amount due to the ITU. The costs for ITU Cost Recovery will be included in the quarterly summary of expenses to Spectrum Five.

### §5. Issues related to space activities

### Article 17
Spectrum Five shall conduct all space activities in a proper manner and in accordance with best practice in the space industry and in compliance with the laws of the Netherlands and the Netherlands Antilles and any other applicable law, including the obligations of the Kingdom of the Netherlands under international law, and in particular Spectrum Five shall not:
a. so conduct its operations as to create any risk of contaminations of outer space or adverse changes in the environment of the earth or jeopardise public health or the safety of persons or property in any part of the world;
b. interfere with the activities of others in the peaceful exploration and use of outer space;
c. prejudice in any way the national security of the Netherlands or the Netherlands Antilles.

### Article 18
Spectrum Five shall indemnify the Kingdom of the Netherlands against any claims according to international law brought against the Kingdom of the Netherlands in respect of damage or loss arising out of activities carried on by Spectrum Five except for those damages arising from the negligence or misconduct of the Kingdom of the Netherlands itself.

---

[2] The 'Regeling Vergoedingen AT 2004' will presumably be subject to some extensive changes in the coming year. Probably a lump-sum payment covering general costs in combination with additional charges for specific working hours and travelling expenses will be the new basis of the cost calculation to satellite operators. The Netherlands Authority will keep Spectrum Five informed of the progress in possible changes in the cost calculation.

6

**Article 19**

Spectrum Five shall insure and continue to insure itself against all liabilities that may arise in respect of damage or loss suffered by third parties, in the Netherlands, the Netherlands Antilles or elsewhere, as a result of activities carried on by Spectrum Five. This obligation shall be satisfied by a policy of insurance under which Spectrum Five is the named insured and the Netherlands Authority and the Netherlands Antilles will be named as additional insureds. Notwithstanding the foregoing, the Parties hereby understand and agree that the insurance described herein is for the contracting, construction, launch and operations of the satellite and therefore shall not be obtained until the commencement of such activities. The Netherlands Authority will receive a transcript of the annual or interim policy, including the terms and conditions of coverage, and a copy of the payment of the premium no less than 30 days prior to the date of entry of that policy.

**Article 20**

Spectrum Five shall immediately notify the Netherlands Authority of any event or other occurrence that is likely to give rise to a claim under any of the policies of insurance effected by Spectrum Five.

**Article 21**

Parties agree that any of the space activities of Spectrum Five, including the launching, bringing into orbit and operating in orbit of the satellite, can be subject to licensing according to future national space legislation. The required licenses will not unreasonably be withheld. Prior to adoption of the Space Law, the Netherlands Authority shall provide any authorizations required for the space object itself, in so far that the Netherlands Authority has the competence to do so. Otherwise, it is understood that no other authorizations, licenses or permits of the Netherlands Authority are required.

**§6. Benefits to the Netherlands Antilles**

**Article 22**

Spectrum Five shall extend Netherlands Antilles TV and Radio signals throughout the island chain via satellite (specifically by focussing a satellite 'spot' beam).

**Article 23**

Spectrum Five shall provide one channel of TV capacity to the Netherlands Antilles which will have full access to the U.S.A. satellite TV market. This channel could be used at the Netherlands Antilles' discretion to promote tourism, trade, banking, and other investment opportunities to the most lucrative viewing audience in the world.

7

**Article 24**
Spectrum Five shall locate, build and operate Spectrum Five's satellite Telemetry, Tracking and Control (TT&C) centre in the Netherlands Antilles.

**Article 25**
Spectrum Five shall locate, build and operate a satellite feeder link in the Netherlands Antilles to 'feed' distance learning and TV programming to the satellite.

**Article 26**
Spectrum Five shall improve educational opportunities through satellite delivered distance learning to schools throughout the islands. The Spectrum Five satellite will transmit educational lectures to the Netherlands Antilles most remote schools. Additionally, lectures would be available at home so long as an individual has a dish and a receiver. It is understood that Spectrum Five will provide the facilities for said transmissions, but actual content will be provided by the Netherlands Antilles.

**Article 27**
Spectrum Five shall sponsor an annual local college scholarship for a student undertaking an engineering and science program in space communications.

**Article 28**
Spectrum Five shall support Bureau Telecommunication and Post of the Netherlands Antilles to improve and update its knowledge of satellite communications.

**Article 29**
Resources covered by these benefits will be placed at the disposal of the Netherlands Antilles during the full lifetime of the satellite this filing applies to. Licences may be needed to bring these benefits in operation; these licences based on the Telecommunications Act 1996 shall be granted by the Minister of Traffic and Transport of the Netherlands Antilles to Spectrum Five. Additionally, the Netherlands Antilles will provide, under current or future regulation, all other authorizations, licenses and permits necessary to build the TT&C centre and to provide services in the Netherlands Antilles.

**§7. Landing rights**

**Article 30**
Spectrum Five shall apply for U.S. landing rights on its own account. In case of unfair treatment by the U.S.A. FCC of Spectrum Five in comparison to other applicants the Netherlands Authority will send a supportive letter. Landing rights must be obtained before 1 January 2010.

## §8. Transfer of rights

### Article 31

Spectrum Five shall not without the prior written consent of the Netherlands Authority transfer to third parties, either in whole or in part, any rights and obligations as concluded in this Agreement. Spectrum Five at all time shall remain ultimately responsible for all transferred rights.

### Article 32

Spectrum Five shall not without the prior written consent of the Netherlands Authority subcontract or otherwise transfer the operational control of any of the space object(s), including the TT&C centre, or authorise, cause or permit performance of the space activities by another entity. Not withstanding the preceding sentence, the Parties hereby agree that Spectrum Five LLC will subcontract space activities concerning the building and the launching. Spectrum Five at all time shall remain ultimately responsible for all subcontracted and leased activities.

## §9. Continuation of the filing procedure

### Article 33

Spectrum Five shall send a progress report to the Radio Communications Agency every three months. Such report will contain information on the developments of the Spectrum Five satellite network as well on the funding and the design of the satellite. Besides it will contain information in an authorized way on the anticipated schedule of the construction of the satellite, construction of the launcher, the anticipated launch window and the insurance scheme under which the satellite will be launched and operated. The report will be handled strictly confidential between the signing Parties.

## §10. Termination and applicable law

### Article 34

1. The State of the Netherlands is entitled to terminate the Agreement immediately upon notice under general principles of law and, unless the Agreement is illegally or unreasonably terminated by the State of the Netherlands, without any right of financial compensation on behalf of Spectrum Five, if:

a. it becomes apparent that while entering into this Agreement (i) Spectrum Five has provided the State of the Netherlands with incorrect information (ii) has withheld certain information or (iii) has given a misrepresentation of facts, and the State of the Netherlands, in case it would have been aware of the correct information and facts, would not have entered into this Agreement or on different conditions;

9

b. Spectrum Five LLC makes a filing for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code or Spectrum Five BV makes a filing for bankruptcy *(faillissementsaanvraag)*;

c. the filing with the ITU fails to succeed;

d. Spectrum Five fails to obtain U.S. landing rights before 1 January 2010;

e. Spectrum Five acts in violation with the provision of article 19;

f. Spectrum Five acts in violation with the provisions of article 31;

g. Spectrum Five has breached one or more of the other obligations of this Agreement;

h. Spectrum Five in any other way cannot fulfil its obligations under this Agreement. In case of any of the circumstances described in subparagraphs (c), (g) and (h), the State of the Netherlands shall not take such action until Spectrum Five has been notified and has been offered a ninety day period to remedy the situation;

2. If the Agreement is terminated according sub1, the Netherlands Authority may suppress or otherwise deal with the ITU filing(s) of the network of Spectrum Five, without any right of financial compensation on behalf of Spectrum Five, unless the Agreement is illegally or unreasonably terminated by the State of the Netherlands.

### Article 35

The State of the Netherlands will never be liable for any damages apart from direct damages. Any liability of the State of the Netherlands for indirect damages, immaterial damages or any kind of punitive damages are hereby excluded.

### Article 36

This Agreement shall exclusively be governed by Dutch law.

### Article 37

Any dispute of whatever nature or scope shall be submitted only to the competent court in the The Hague District.

Stated and signed:

1.     **The State of the Netherlands**

Location: The Hague, the Netherlands
Date: 22 October 2004
Deputy Director-General
Directorate-General for Telecommunication and Post
Dr. G.A.A.M. Broesterhuizen

Location: Groningen, the Netherlands
Date:
Managing Director Chief Inspector
Radio Communications Agency
Ms. M.G. Schreur

2.     **The Government of the Netherlands Antilles**

Location: Willemstad, the Netherlands Antilles
Date: 5 Nov. 2005
Director of the Bureau Telecommunication and Post
Ing. J.D. de Canha

3.     **Spectrum Five LLC**

Location: The Hague, the Netherlands
Date: 22 October 2004
David Wilson
President

4.       **Spectrum Five BV i.o.**

_P. David Wilson_

Location: The Hague, the Netherlands
Date: 22 October 2004
David Wilson
President

M.6. Schreur

12

**CERTIFICATE OF SERVICE**

      I, Michael H. Strub, Jr., do hereby certify that I have, on this 5th day of September, 2023, caused a copy of the foregoing "September 5, 2023 Letter to the FCC" to be sent via electronic mail to:

R. David Wilson
Spectrum Five LLC
2445 California Street NW
Washington, D.C.  20008
rdw@spectrumfive.com

Jennifer D. Hindin
Henry Gola
Sara M. Baxenberg
Garriott Boyd
Wiley Rein LLP
1776 K Street NW
Washington, D.C. 20006
JHindin@wiley.law
HGola@wiley.law
SBaxenberg@wiley.law
BGarriott@wiley.law
*Counsel for IntelSat*

Samuel L. Feder
Jenner & Block
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001-4412
SFeder@jenner.com
*Counsel for Spectrum Five, LLC*

Francisco R. Montero
Seth Williams
Fletcher Heald & Hildreth, PLC
1300 North 17th St., 11th Fl.
Arlington, VA 22209
montero@fhhlaw.com
williams@fhhlaw.com
*Counsel for Spectrum Five, LLC*

Michelle Bryan
Susan H. Crandall
Cynthia J. Grady
Intelsat US LLC
7900 Tysons One Place
McLean, VA 22102
michelle.bryan@intelsat.com
susan.crandall@intelsat.com
cynthia.grady@intelsat.com
*General Counsel*

                    Michael H. Strub, Jr.